United States Court of Appeals
Fifth Circuit

**F I L E D**

September 28, 2006

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 04-11310

---

WILLIE FRANK WILLIAMS, JR.,

                                        Plaintiff-Appellant,

versus

VERONICA BALLARD, Parole Board Director; VICTOR RODRIGUEZ, Parole
Board Chairman; JOHN WHITMIRE, Senator, Chairman of the Senate
Committee on Criminal Justice; JANE NELSON, Senator, Senate
Committee on Criminal Justice; BILL RATLIFF, Senator, Senate
Committee on Criminal Justice; FLORENCE SHAPIRO, Senator, Senate
Committee on Criminal Justice; ROYCE WEST, Senate Committee on
Criminal Justice; OWEIDA CARTER, Parole Field Tracking Officer;
BILL W LINSON, Region Director; JAN LEWIS, Parole Officer; DALE
HEISCH, Parole Field Tracking Officer; JEFF MCGUIRE, Parole
Officer; CHARLES WARD, Parole Field Tracking Officer; JOHN & JANE
DOES, Employees, Members, Supervisors for the Board of Pardon and
Parole; JANE & JOHN DOES, Texas Legislature Senators; GERALD
GARRETT, Individually and in his official capacity as Chairman of
the Texas Board of Pardons and Paroles; THOMAS A DAVIS, JR,
Individually and in his official capacity as Director, Texas
Department of Public Safety; BRYAN COLLIER, Individually and in
his official capacity as Director of the Texas Department of
Criminal Justice-Parole Division; IOLA BROWN, Individually and in
her official capacity as Parole Supervisor, Texas Department of
Criminal Justice Parole Division,

                                        Defendants-Appellees.

---

Appeal from the United States District Court
for the Northern District of Texas

---

Before HIGGINBOTHAM, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:

     Texas state prisoner Willie Williams, proceeding pro se, filed

this § 1983 action against various state officials having authority

over the parole system, seeking damages and injunctive relief related to defendants' imposition, without procedural due process,[1] as a condition of parole that he register as a sex offender under the Sex Offender Registration Act (SORA), TEX. CODE CRIM. PROC. ANN. art. 62.001, *et seq.* (Vernon Supp. 2006), and receive sex-offender therapy,[2] even though he was never convicted of a sex offense.[3] The district court[4] concluded that defendants violated Williams's right to due process when it imposed these conditions on his parole in 1998, but it denied damages after concluding that qualified immunity shielded defendants because Williams's right was not

---

[1] Williams made claims aside from procedural due process. We deal with them later.

[2] Williams challenged other conditions on his parole seemingly related to sex offenses: for example, that he avoid children, photographic equipment, internet access, and sexually explicit media. But the district court held that only the requirements that he register under SORA and receive therapy implicated due process because the other "non-public [hence, presumably, less stigmatizing] sex-offender conditions," see Coleman v. Dretke ("Coleman I"), 395 F.3d 216, 221 (5th Cir. 2004) (holding that sex-offender registration and treatment are stigmatizing); Coleman v. Dretke ("Coleman II"), 409 F.3d 665, 667-68 (5th Cir. 2005) (on denial of petition for rehearing en banc) (holding that sex-offender treatment by itself is stigmatizing), did not impose "'atypical and significant hardships' in relation to the ordinary incidents of parole" and are "clearly within the discretion of the parole board." Indeed, the court noted, these other conditions are part of "Special Condition X," an element of "Super-Intensive Supervision Parole," which may be imposed on any high-risk releases at the Parole Board's discretion, whereas the registration requirement should be imposed only pursuant to SORA. (The source of the treatment requirement is unclear.) Williams does not challenge this conclusion on appeal, and it is consistent with Coleman I and Coleman II, where this court held that the registration and therapy conditions implicated due process, but had no occasion to address other conditions.

[3] Texas originally charged Williams with sexual assault stemming from an incident in a Tarrant County jail, but Williams later plead guilty only to aggravated assault causing serious bodily injury.

[4] The primary reasoning was contained in the magistrate judge's findings and recommendations. For simplicity's sake, we refer to that reasoning as the district court's.

2

clearly established law at that time. It also denied as moot Williams's request for an injunction, noting that Williams was back in prison for an unrelated parole violation and defendants had ceased requiring parolees not convicted of sex offenses to register under SORA. The district court did, however, issue a declaratory judgment stating that some process was required before requiring registration of parolees not convicted of a sex offense.[5] After this decision, we decided Coleman v. Dretke ("Coleman I"), 395 F.3d 216 (5th Cir. 2004) and Coleman v. Dretke ("Coleman II"), 409 F.3d 665 (5th Cir. 2005) (on denial of petition for rehearing en banc), agreeing that people like Williams were entitled to some process before being required to register or pursue therapy. Williams appeals.

I

The district court concluded that qualified immunity shielded defendants, precluding damages, because Williams's right to procedural due process was not a "clearly established statutory or constitutional right[]...of which a reasonable person would have known" when Williams was paroled[6] in 1998 and forced to register

---

[5] The court's declaratory judgment referred only to the SORA registration requirement, yet the court found that requiring therapy also implicated due process. We find it clear from the court's opinion, with which we agree, see Coleman I, 395 F.3d at 221; Coleman II, 409 F.3d at 667-68 (holding explicitly that requiring treatment, in the absence of registration, still requires due process), that both requirements necessitate due process, and we read the declaratory judgment to say that as well.

[6] Technically, Williams was placed on "mandatory supervision," not "paroled." This does not matter, since the plaintiff in Coleman I was on mandatory supervision, and the court in Coleman II explicitly discussed the

3

and seek therapy.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Williams urges this was error.

The fundamental question is whether the state of the law gave defendants fair warning that their conduct was unconstitutional. See Hope v. Pelzer, 536 U.S. 730, 739-40 & n.10 (2002).  Because at the time there was no binding precedent clearly establishing the right, we must determine if other decisions at the time showed "consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful."  See McClendon v. City of Columbia, 305 F.3d 314, 329 (5th Cir. 2002) (internal quotation marks omitted).  As the district court noted, in 1998 only the Ninth Circuit had recognized a non-sex offender's right against mandatory sex-offender registration and treatment as a condition of parole, see Neal v. Shimoda, 131 F.3d 818, 828-30 (9th Cir. 1997), and it unsurprisingly held the law not clearly established, see id. at 832.  Moreover, another Ninth Circuit panel that same year declined to recognize a non-sex offender's right against registration under a community notification statute as a condition of parole.  See Russell v. Gregoire, 124 F.3d 1079, 1093-94 (9th Cir. 1997).  We cannot conclude from this that Williams's right was clearly established.

As he did below, Williams also points to Kirby v. Siegelman, 195 F.3d 1285 (11th Cir. 1999) and Chambers v. Colorado Department

nature of mandatory supervision as implicating the due process interest at issue here.  For convenience, we say Williams was "paroled."

4

of Corrections, 205 F.3d 1237 (10th Cir. 2000). The district court observed that both cases were decided after Williams was required to register in 1998. Williams counters that because defendants forced him to comply with the conditions until his re-incarceration in 2001, these cases are relevant. Even if we were to consider them, the district court correctly concluded they do little to render Williams's right clearly established: the prisoner in Chambers lost accumulated good time credits when he refused to accept a sex-offender classification while in prison, a liberty interest different from that here, and in Kirby the court appears to have found a due process violation on the basis of stigma alone, contrary to our precedent, see Vander Zee v. Reno, 73 F.3d 1365, 1369 (5th Cir. 1996). Consequently, even if consideration of these cases made the number of cases sufficient, the lack of consistency among their rules makes "the contours of the right" not "sufficiently clear." See McClendon, 305 F.3d at 331 (declining to find a right "clearly established" where six circuits had recognized a general right but disagreed on its contours) (internal quotation omitted).

The district court did not have the opportunity to address Coleman I and Coleman II, but they do not change the result. Although this court in Coleman I held the right "clearly established Federal law" under AEDPA, dictated by the 1980 Supreme Court case Vitek v. Jones, 445 U.S. 480 (1980), the panel on petition for rehearing on banc in Coleman II noted that the AEDPA

5

and qualified immunity standards differed, despite using the same terms.  See Coleman II, 409 F.3d at 668-69.  This makes sense, given the different goals of AEDPA and qualified immunity.  The former ensures respect for state court judgments, mandating that we defer to judicial decisions by trained lawyers; the latter shields state officials, generally untrained in the law, for their discretionary acts.  While Williams's right may have been "clearly established" under AEDPA in 1998 (or 2001), it was not "clearly established" such that defendants should be subjected to liability for their reasonable belief in the legality of their actions.

II

Williams also asked the district court for injunctive relief against any future requirement, without hearing or other process, that he register as a sex offender upon parole and pursue treatment.[7]  The court deemed that request mooted by the policy change of the Board of Pardons to no longer require registration if the prisoner was not convicted of a sex offense, although the court issued a declaratory judgment stating that some process was required before requiring registration of someone not convicted of sex offense, like Williams.[8]  Williams repeats here his request for an injunction, moving that we enjoin defendants from requiring him

---

[7] Qualified immunity does not protect officials from injunctive relief. See Orellana v. Kyle, 65 F.3d 29, 33 (5th Cir. 1995).

[8] See supra note 5 (explaining that we read the declaratory judgment to cover therapy as well).

to register as a sex offender or pursue treatment upon parole, or taking current action against him based on his status as a sex offender, without due process. Williams now alleges that he was informed on January 31, 2006 that he will be compelled to register upon parole regardless of the court's order or the existence of any process; moreover, he alleges that on December 7, 2005 he was denied without process the opportunity to participate in a community college computer skills program because he was classified as a sex offender.

Williams's evidence is not properly before this court. More importantly, the Board of Pardons, both in this case below and in this court in <u>Coleman I</u> and <u>Coleman II</u>, has stated that in the future it will not require prisoners like Williams to register under SORA. This effectively moots the request for injunctive relief. If the Board does indeed compel Williams to register or seek sex-offender therapy[9] without providing process, Williams can seek an injunction in the district court based on this order at that time. Furthermore, if Williams's allegation that he was denied participation in the skills program based on classification as a sex offender is true, he can bring an action in district court

_____

[9] As we explained, <u>see</u> <u>supra</u> note 5, the Board also cannot require sex-offender therapy of people like Williams, unless it provides some process. Although the record does not show that the Board has agreed to change this policy, <u>see also</u> <u>Coleman II</u>, 409 F.3d at 667-68 (holding that the issue was not mooted because the Board had agreed only to change the registration policy, not the therapy policy), we will assume the Board has changed this policy to comply with the clear mandate of <u>Coleman I</u> and <u>Coleman II</u>.

pursuant to <u>Coleman I</u> and <u>Coleman II</u>.[10]

                              III

Williams makes several other claims. He contends that defendants deprived him of substantive due process, but the district court properly concluded that neither party adequately addressed the claim below. In any event, <u>Coleman I</u> forecloses the argument. <u>See</u> <u>Coleman I</u>, 395 F.3d at 224-25 (concluding that imposition of sex-offender condition at issue here did not "shock the conscience" so as to violate substantive due process).

Liberally construed, Williams's briefs raise several claims not raised in the district court, including violation of the First and Fourth Amendments and the prohibition against *ex post facto* laws. Because these claims were not raised in district court, we do not address them on appeal. <u>See</u> <u>Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Ctrs., Inc.</u>, 200 F.3d 307, 316-17 (5th Cir. 2000).

Williams also failed to discuss in his opening brief his claims that defendants violated his federal constitutional rights to equal protection and privacy and his state law right against invasion of privacy; he eventually addressed the federal claims, but only in his reply brief. Accordingly, we deem these claims

---

[10] We note that this alleged action by defendants is unlike the SORA or treatment requirements since it is unrelated to conditions on parole. Thus the court would have to analyze the effect of <u>Coleman I</u> and <u>Coleman II</u> on this action — namely, whether the action was sufficiently stigmatizing and otherwise implicative of a due process interest to require some process.

8

abandoned.  See Yohey v. Collins, 985 F.2d 222, 225 (5th Cir. 1993); Unida v. Levi Strauss & Co., 986 F.2d 970, 976 n.4 (5th Cir. 1993).

Williams next contends that the district court erroneously dismissed without prejudice his state law claims for libel and slander, which apparently asserted that statements on the DPS website were libelous per se under Texas law.  The district court declined to exercise supplemental jurisdiction over these claims after dismissing all the federal claims.  Because we affirm the district court's dismissal of all federal claims, its dismissal without prejudice of the state law claims was proper.  See Bass v. Parkwood Hosp., 180 F.3d 234, 246 (5th Cir. 1999).

Finally, Williams moves for appointment of counsel.  In a civil case, an attorney should be appointed only under exceptional circumstances.  See Ulmer v. Chancellor, 691 F.2d 209, 212 (5th Cir. 1982).  Given our disposition of this appeal, the nature of Williams's claims, and the fact that he terminated his prior competent court-appointed counsel in the middle of the case below, those circumstances do not exist, and we deny the motion.

AFFIRMED.