# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 4, 2010

No. 08-20817

Charles R. Fulbruge III
Clerk

WILLIAM JAMES THAYER,

Plaintiff - Appellant

v.

MARY ADAMS, Nurse Manager; KRISTI FLISOWSKI, LVN; MARGIE
GONZALES, LVN; KATHLEEN A ROGERS,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:07-CV-920

Before GARZA, DeMOSS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Plaintiff William James Thayer appeals the district court's entry of
summary judgment in favor of Defendants Mary Adams, Kristi Flisowski and
Margie Gonzales on Thayer's deliberate indifference claim arising under 42
U.S.C. § 1983. Thayer is an inmate in the custody of the Texas Department of
Criminal Justice (TDCJ). He alleges that defendants inflicted wanton and
unjustifiable pain and suffering upon him by failing to respond to his serious

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 08-20817

medical needs in violation of the Eighth Amendment to the U.S. Constitution. For the reasons stated herein, we affirm the district court's decision.

## I. FACTS AND PROCEDURE

*Thayer's Allegations*

Thayer was scheduled to have knee replacement surgery on March 28, 2005, while in custody of TDCJ. The procedure was halted and Thayer was discharged from the University of Texas Medical Branch (UTMB) because he had an anaphylactic response to a medication. Thayer received 23 staples in his knee and was remanded to the Ellis Unit of TDCJ. Upon arriving at Ellis Unit on the evening of March 28, Thayer was assigned to a cell up a flight of stairs and was given no blankets or sheets. He required the assistance of other inmates to reach his cell because he could not climb stairs alone. He could not sleep because he was cold and in pain. The next day, March 29, Thayer went to the infirmary for "emergency treatment," but stated that he was denied treatment by defendants Flisowski and Gonzales, who were nurses employed by TDCJ. Thayer was able to receive pain medication from the pill window. Thayer alleged, however, that he received inadequate treatment or no treatment at all between March 29, 2005, and April 2, 2005. He says his pain medication was discontinued at the direction of defendant Adams. He sued, alleging that Flisowski, Gonzales, and Adams acted with deliberate indifference to his pain and legitimate medical needs. Thayer sought declaratory and injunctive relief, as well as punitive damages. He moved for appointment of counsel, which the district court denied.

The Attorney General advised the court that defendants Flisowski and Gonzales were no longer employed by UTMB. Adams answered, denied wrongdoing, and asserted her entitlement to official immunity, immunity under the Eleventh Amendment, and qualified immunity. Adams moved for summary judgment, stating that she was not the nurse manager of the Ellis Unit while

Thayer was housed there. Rather, she was manager of the Estelle Unit, and had no responsibility over the Ellis Unit until she was transferred there on August 1, 2005. She also stated that she never received Thayer's emergency grievances. Adams submitted personnel records and a sworn affidavit in support of these assertions.

*Declarations by Thayer and Other Inmates*

In response to Adams's motion, Thayer filed a declaration reiterating the assertions from his complaint. Thayer stated that, on the morning of March 29, 2005, he presented himself, with the help of fellow inmates, to the infirmary, where Flisowski and Gonzales were working. After Thayer explained to them his condition, including his return from the hospital, his cell assignment, and "being in severe pain," both said that they were too busy to help, even though "all they were doing was sitting at the desk talking." Thayer then filed emergency grievances. The next day, March 30, 2005, Thayer went to the pill window, "and was told [his] medication had been discontinued." He went to the infirmary, where Flisowski told him Adams had ordered his medication discontinued. Thayer explained his situation once more to Flisowski and asked her to look into his file. She did so, but said she could do nothing for him at that time. Thayer next states: "I was helped back to my cell which I stayed in because I couldn't get around and the pain I was in was so severe. Inmates gave me food because I couldn't make it to the chow hall." Finally, Thayer was examined on April 2, 2005, by a nurse Connell, who is not a defendant. Connell called a doctor, who reinstated Thayer's pain medication. Thayer's dressing was changed for the first time on April 2, 2005. He had swelling and bruises on his leg, but no infection.

Thayer also submitted the declaration of Marc Ashbrook, a fellow TDCJ inmate, who repeated many of Thayer's assertions. Ashbrook said that on March 29, Flisowski and Gonzales were too busy to help Thayer, even though

both were just "sitting at the desk at the infirmary." On March 30, Ashbrook overheard Flisowski tell Thayer that Adams had discontinued Thayer's pain medication. Ashbrook stated: "Plaintiff was in so much pain he couldn't understand why they, the nurses and medical staff, were doing this to him when it was so obvious that he needed medical attention." Thayer also submitted medical records to the district court, which confirmed that he was scheduled for a knee replacement at UTMB. The operation was halted because Thayer had a "possible anaphylactic reaction" and became "severely hypotensive" after he was placed under general anesthesia and an incision was made on his leg. The records also show that Thayer was prescribed Tylenol with Codeine when he was discharged from UTMB. Notes from his April 2, 2005, examination reflect his assertion that "pain medication was discontinued and motrin ordered." The records also show that Thayer's surgery was rescheduled for the following week, and reflect his assertion that he "ha[d] been told not to take anything with motrin and aspirin prior to surgery." His "[i]ncision line [was] clean and dry," but he had swelling and bruises from the knee to the ankle.

The district court considered Adams's motion and Thayer's response, and held that summary judgment was inappropriate. The court concluded that "a fact issue remains about whether Nurse Adams had any personal involvement in the discontinuation of Thayer's pain medication or in the supervision of others who were charged with providing him with medical care." The court also noted that Flisowski and Gonzales had not been served and that neither had filed an answer. Because they no longer worked for TDCJ, these defendants could not be represented by the Attorney General without their express consent. The court stated it would order service on Flisowski and Gonzales separately. Finally, the court allowed Thayer to correspond with three inmates who had witnessed Thayer's treatment for the purpose of obtaining a declaration or affidavit.

No. 08-20817

Thayer then filed a request for production of documents. He asked to be provided with copies of grievances, complaints, and related documents filed against the defendants, their work histories, policies, a health care manual, "[a]ny and all orders Medical Supervisor Mary Adams made during her employment with UTMB & TDCJ," the grievance manual, and several other similar documents. Adams opposed the motion. The district court denied the motion because Thayer had not requested leave to conduct additional discovery, because he had not shown how his requests related to his claims, and because Adams had asserted the defense of qualified immunity.

Flisowski answered. She denied refusing to treat Thayer, or that she had any role in discontinuing his pain medication. She raised, inter alia, the defenses of sovereign immunity under the Eleventh Amendment and qualified immunity.

Thayer then filed declarations by Michael Hooks and William E. Hancock, Jr. Hooks said he helped Thayer to the pill window, where "the pill window nurse" told him that his medication had been discontinued. Hooks then repeated many of the same assertions that Thayer and Ashbrook made, including that Flisowski and Gonzales did not treat Thayer on March 29, despite not being busy at the time; that Flisowski stated on March 30 that Adams had ordered Thayer's pain medication discontinued; and that Thayer was in obvious pain. Hancock's declaration provided general assertions that Flisowski and Gonzales did not provide adequate medical treatment to inmates. Hancock stated that he once spoke with Thayer while Thayer was in the infirmary; Thayer told Hancock that "his knee was always hurting him badly and she would give him Ibuprofin for the pain, but refused to give him anything stronger." Hancock did not state when this conversation took place.

The district court then ordered the office of the Attorney General of Texas, counsel for defendants Adams and Flisowski, to file a report under *Martinez v.*

5

No. 08-20817

*Aaron*, 570 F.2d 317 (10th Cir. 1978), or in the alternative, to file a motion for summary judgment within 60 days.

*Defendants' Summary Judgment Motion and Thayer's Response*

Adams and Flisowski then moved for summary judgment.[1]  They submitted Thayer's medical records and an affidavit from Nurse Mary Gotcher in support of the motion.  Defendants asserted that Thayer was prescribed Tylenol #3 with Codeine when he was discharged from UTMB, and that this drug must be picked up from the pill window.  When Thayer arrived at the Ellis Unit on March 28, 2005, UTMB physician Dr. Glenda Adams changed his medication from Tylenol #3 to Motrin.  Inmates are allowed to keep Motrin with them and are not required to go to the pill window to get this drug.  Medical personnel examined Thayer on April 2, 2005, and noted that his incision was "clean and dry."  Thayer complained about the change in medication.  A member of the nursing staff contacted a doctor, who ordered that the prescription for Tylenol #3 be reinstated.  Thayer underwent surgery on April 15, 2005, and was discharged with prescriptions for Tylenol #3 and a blood thinner.  He received these medications.  The defendants argued that they were entitled to qualified immunity because they were not personally involved with changing Thayer's prescription, his assignment to a certain cell, or his not receiving blankets and sheets.  They alternatively argued that these actions did not amount to deliberate indifference.  They contended that Thayer's suit was barred by Eleventh Amendment immunity to the extent he sought to recover against them in their official capacities.

---

[1] Gonzales did not join in this motion.  The Attorney General's office stated that "this office has not been in contact with Margie Gonzales, despite our efforts to do so.  She has not requested representation, and to our knowledge, has not been served with process."  The Attorney General reiterated these assertions in its letter brief on behalf of Appellees Adams and Flisowski.

No. 08-20817

The documents submitted by the defendants supported their factual assertions. Medical records show that Thayer was admitted to UTMB on March 21, 2005, and was discharged on March 28, 2005, with a prescription for Tylenol with Codeine (Tylenol #3). Dr. Adams prescribed Motrin for him when he arrived at the Ellis Unit and discontinued the Tylenol #3. Thayer had surgery in April 2005 and was discharged with prescriptions for Tylenol #3 and injections of Lovenox, an anticoagulant.

Gotcher was the Nursing Director at UTMB, Correctional Managed Care, and she supervised nursing personnel at 43 TDCJ facilities. She reviewed Thayer's records before giving her affidavit, and she was familiar with UTMB policies and procedures concerning nursing care. Gotcher confirmed that "Adams did not work at the Ellis Unit during the time frame of this lawsuit and would have had no personal involvement in the medical care of an inmate at the Ellis Unit." Rather, Adams was the Cluster Nurse Manager of the Estelle Unit at this time. Because Flisowski and Gonzales were LVNs, their "scope of practice" did not include ordering "any treatment or medication for any patient." Gotcher noted that Dr. Adams changed Thayer's prescription from Tylenol #3 four times a day to Motrin as needed, and Dr. Adams's order specified that Thayer was to be permitted to keep Motrin on his person. This change allowed Thayer to keep his medication with him, rather than having to ambulate to the pill window. "The Dr. Adams referred to in Thayer's medical record is Dr. Glenda Adams, not Cluster Nurse Manager Mary Adams." Thus, "[i]f someone informed Mr. Thayer that his medications had been changed by 'Adams,' that reference would be to Dr. Glenda Adams, who did change his Tylenol #3 prescription to Motrin." Due to the change in medications ordered by Dr. Adams, Flisowski and Gonzales could not have given Thayer Tylenol #3.

Thayer responded to the motion for summary judgment and offered his own declaration and medical records in support of the response as well as

7

declarations from Ashbrook, Hooks, Hancock, and inmate Daniel Straw. Thayer insisted that the defendants "refused [him] all and any kind of medical treatment" and thus acted with deliberate indifference.

*The District Court's Ruling*

The district court granted defendants' motion for summary judgment and dismissed Thayer's suit. The district court first determined that the defendants were entitled to Eleventh Amendment immunity insofar as Thayer sought damages against them in their official capacities. The court next concluded that the defendants were entitled to qualified immunity. The district court noted that Thayer's "chief complaint" was that Nurse Adams denied him pain medication by changing his prescription from Tylenol #3 to Motrin, and that Thayer also complained that Nurses Flisowski and Gonzales "denied him care for pain after his prescription was changed" and did not give him fresh bandages. The court concluded that "the record shows that none of the defendants named in the complaint were involved in the decision to change Thayer's medication." Rather, the decision was made by Dr. Glenda Adams. The district court noted that Thayer had submitted a copy of a grievance that he filed on March 31, 2005. In this grievance, he averred that someone in the infirmary told him that "Dr. Adams at U.T.M.B. discontinued medication." The court held that Thayer's claim concerning the defendants' alleged interference with his "prescribed medication regime" failed because the evidence showed that the defendants were not personally involved with that decision.

The district court recounted that Thayer's records showed that, upon discharge from UTMB on March 28, 2005, he was to use crutches, follow up with UTMB in two weeks, maintain a regular diet, and get Tylenol #3. No orders were given for any particular follow up care at Ellis Unit; no restrictions were placed upon Thayer's cell assignment; no order was made for a dressing or bandage change; and no order was given for an anticoagulant. Dr. Adams then

changed the pain medication to Motrin. The court concluded that the defendants did not have the power to override Dr. Adams's orders and that they did not act with deliberate indifference to Thayer's serious medical needs with respect to his medication.

Insofar as Thayer complained that his wound was not examined and his bandages were not changed, the district court concluded that he had not shown that the defendants were deliberately indifferent. Thayer's wound was clean and dry on April 2, 2005, and his surgery was successfully performed that same month. Thayer did not show that he suffered any harm due to the defendants' failure to change his bandages or examine his wound. The court also concluded that the evidence did not show that defendants' actions were objectively unreasonable. Rather, "the medical records reflect that Thayer was treated according to the discharge instructions issued by UTMB on March 28, 2005."

The district court further noted that, although Gonzales was not served and had not answered, the same analysis that applied to Thayer's claims against the other defendants likewise applied to Thayer's claims against her. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (allowing non-answering defendants to benefit from grant of appearing defendants' summary judgment motion). The district court thus dismissed Thayer's claims against Gonzales. Thayer filed a timely notice of appeal.

## II. DELIBERATE INDIFFERENCE CLAIMS

We review the grant of a motion for summary judgment de novo. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009). Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The proponent of the motion typically bears the burden of showing a lack of evidence to support his opponent's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the

movant meets his initial burden, the burden shifts to the nonmovant to set forth specific facts showing the existence of an issue for trial. *Id.* at 324. The nonmovant cannot satisfy his summary judgment burden "with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (internal quotation marks and citations omitted).

We approach summary judgment differently when qualified immunity is at issue. *See id.* In this context, "[t]he moving party is not required to meet its summary judgment burden for a claim of immunity." *Id.* (internal quotation marks and citation omitted). Rather, the movant need only plead her good-faith entitlement to qualified immunity, whereupon "the burden shifts to the plaintiff to rebut it." *Id.* (internal quotation marks, citation, and emphasis omitted); *see also Gates v. Texas Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008) (noting that, when a government official pleads qualified immunity, the plaintiff must "rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct").

A.

Thayer argues that the evidence shows that the defendants were personally involved in denying him care and acted with deliberate indifference by "refusing any kind of medical treatment." He reiterates his contention that Adams did not respond to his emergency grievance and discontinued his Tylenol #3. The defendants contend that the district court properly granted judgment in their favor.

Thayer does not address, and has thus abandoned, the issue whether the district court erred by determining that the defendants were entitled to Eleventh Amendment immunity. *See Longoria v. Dretke*, 507 F.3d 898, 901 (5th Cir. 2007)

(noting that even pro se litigants must brief arguments in order to preserve them).  Thayer thus has shown no error in connection with the district court's determinations that the defendants were entitled to immunity with respect to his claims against them in their official capacities and that their motion for summary judgment should have been granted as to these claims.  *See id.*

B.

To determine whether officials are entitled to qualified immunity for a constitutional violation, we conduct a familiar two-step analysis.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 129 S. Ct. 808, 813 (2009); *see also Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).  We first determine whether the plaintiff has alleged a violation of a constitutional right; "if so, we turn to whether the officers' conduct was objectively reasonable in light of clearly established law at the time the challenged conduct occurred."  *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).  We apply an objective standard, "based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions."  *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007).  We have the discretion to decide which qualified immunity prong to address first, "in light of the circumstances in the particular case at hand."  *Collier*, 569 F.3d at 217.

Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when they demonstrate deliberate indifference to a prisoner's serious medical needs, constituting an "unnecessary and wanton infliction of pain."  *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (internal quotation marks, citation, and emphasis omitted).  A prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be

11

drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Failed treatments, negligence, and medical malpractice are insufficient to give rise to a successful claim of deliberate indifference to serious medical needs. *Gobert*, 463 F.3d at 346. A prisoner who merely disagrees with the course of treatment provided, or contends that he should have received additional treatment, likewise does not raise a viable deliberate indifference claim. *Id.*; *see also Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

To prevail on a claim of deliberate indifference to medical needs, the plaintiff must establish that the defendant denied him treatment, purposefully gave him improper treatment, or ignored his medical complaints. *Gobert*, 463 F.3d at 346; *Domino*, 239 F.3d at 756. "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Gobert*, 463 F.3d at 346 n.24 (quoting *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995)). "Deliberate indifference is an extremely high standard to meet." *Id.* at 346 (internal quotation marks and citation omitted). In a situation where the deficiencies in medical treatment were minimal, continuing pain alone does not constitute a constitutional violation. *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). A delay in treatment likewise does not violate the Eighth Amendment unless there has been deliberate indifference that results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Nevertheless, if a prisoner establishes deliberate indifference to his serious medical needs, he may recover damages for pain he suffered during the delay of treatment. *See Easter v. Powell*, 467 F.3d 459, 464-65 (5th Cir. 2006).

No. 08-20817

C.

Thayer has not shown that the defendants acted with deliberate indifference to his serious medical needs concerning his cell assignment, lack of blankets, lack of Tylenol #3, lack of anticoagulant injections, or lack of bandage changes. A review of the record establishes that Nurse Mary Adams never saw Thayer and took no actions in relation to his treatment. Adams was not assigned to the Ellis Unit and had no supervisory authority to respond to Thayer's complaints or grievance forms, which would not have been submitted to her. To the extent that Thayer argues that a change to his medication was ordered by Nurse Adams, rather than Dr. Adams, the record refutes this assertion.[2] *See Gobert*, 463 F.3d at 346 n.24. Thayer has not demonstrated that the district court erred in dismissing his claims against Adams.

There was likewise no error in the district court's dismissal of Thayer's claims that Flisowski and Gonzales failed to treat him. We must conclude, after carefully reviewing the record, that Flisowski's and Gonzales's actions did not show deliberate indifference, and were not "objectively unreasonable in light of clearly established law at the time of the conduct in question." *See Freeman*, 483 F.3d at 411. Thayer says Flisowski and Gonzales denied him treatment and ignored his complaints of pain. However, they had no authority to prescribe drugs or embark on a different course of treatment. Moreover, Thayer's assertions are belied in part by his statement that Flisowski examined his records on March 30, 2005, and concluded that she could not give him Tylenol #3 in light of Dr. Adams's orders. Thayer has never asserted that he asked the

---

[2] To the extent Thayer avers that his declarations, when coupled with those of other inmates, raise a genuine issue of material fact as to his claim against Nurse Adams, he is mistaken. None of these individuals claims to have heard or otherwise witnessed Nurse Adams change Thayer's medication. They either allege that they heard someone else aver that Nurse Adams had taken this action or assert that Nurse Adams took this action without explaining how they learned of Nurse Adams's involvement. Thayer thus offers only hearsay and assertions lacking any indicia of personal knowledge.

13

defendants for Motrin, that they refused to give him this drug, or that they otherwise hampered his receipt of this medication. While Thayer complains that his dressing was not changed, this was not prescribed, and Thayer suffered no infection or lasting harm. Because Gonzales and Flisowski were not empowered to take action contrary to doctor's orders, their inability to alleviate Thayer's pain is not a grievance of constitutional magnitude. *See Gobert*, 463 F.3d at 346; *cf. Easter*, 467 F.3d at 464-65 (denying qualified immunity where nurse failed to follow a prescribed course of treatment that called for the administration of nitroglycerin to inmate when he experienced chest pain); *Harris v. Hegmann*, 198 F.3d 153, 159-60 (5th Cir. 1999) (denying qualified immunity to doctor and nurses who ignored inmate's "urgent and repeated requests for immediate medical treatment for his broken jaw and his complaints of excruciating pain").

## III. DISCOVERY MATTERS

Thayer says the district court hamstrung his ability to prove his case by denying his discovery request on the basis that defendants had invoked qualified immunity. "We review the district court's decision to preclude further discovery prior to granting summary judgment for abuse of discretion." *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1441 (5th Cir. 1993) (citations omitted). Thayer has shown no error in connection with the district court's discovery ruling. The defense of qualified immunity protects officials "from the concerns of litigation, including avoidance of disruptive discovery." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009) (quotation omitted). In accordance with this principle, a defendant who invokes qualified immunity "is entitled to dismissal before the commencement of discovery" if the plaintiff's assertions fail to "state a claim of violation of clearly established law." *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996) (internal quotation marks and citation omitted). Even limited discovery on the issue of qualified immunity "must not proceed until the district court first finds that the plaintiff's pleadings assert facts which, if true, would

14

overcome the defense of qualified immunity." *Wicks v. Miss. State Employment Servs.*, 41 F.3d 991, 994 (5th Cir. 1995) (emphasis omitted).  Thayer does not identify, and a review of his complaint does not reveal, allegations sufficient to raise a specific factual issue concerning the legality of the defendants' behavior such that he would be entitled to discovery.  Thayer has shown no error in connection with the district court's discovery decision.

## IV. APPOINTMENT OF COUNSEL

Finally, Thayer argues that he should have received appointed counsel because his case is complex and he is ignorant of the law.  Indigent plaintiffs proceeding under § 1983 are not entitled to appointed counsel absent exceptional circumstances, and we review the denial of such a motion for a clear abuse of discretion.  *Baranowski v. Hart*, 486 F.3d 112, 126 (5th Cir.), *cert. denied*, 128 S. Ct. 707 (2007); *Williams v. Ballard*, 466 F.3d 330, 335 (5th Cir. 2006).  Factors used to determine whether the appointment of counsel is appropriate in a civil case include "the type and complexity of the case," the plaintiff's ability to present his case, the plaintiff's ability to investigate his case, and the level of skill needed to present evidence and cross-examine witnesses.  *Baranowski*, 486 F.3d at 126 (quotation omitted).  Thayer has not shown that his case is exceptional.  He has investigated and presented the facts of his case well, and has ably identified the controlling legal standards.  The district court did not abuse its discretion by declining to appoint counsel to represent Thayer.  *See id.*; *Williams*, 466 F.3d at 335.

## V. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.