United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 5, 2006**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

—————————

No. 05-20603

—————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TIMOTHY EUGENE NEWMAN,

Defendant - Appellant.

—————————————————————————————

Appeal from the United States District Court
For the Southern District of Texas

—————————————————————————————

Before KING, GARZA, and OWEN, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Timothy Newman appeals his conviction for being a felon in knowing possession of a firearm,

in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). Newman challenges the denial of his motion to

suppress guns found during a warrantless search of his home.

I

Federal DEA agents set out to arrest George Nguyen, a suspected drug dealer for whom they

had an arrest warrant. The agents went to a house that Nguyen was known to frequent at a time

when Nguyen's rental car was parked behind a drug store close to the house. They did not have probable cause to obtain a warrant to enter the house, so they stayed outside and watched, hoping that Nguyen would exit the premises. After two hours of surveillance, agents decided to approach the residence, knock, and inquire whether Nguyen was present (commonly known as a "knock and talk"). Ten agents assembled themselves into three teams, donned their official protective vests and weapons, and approached the house. When they were approximately 15 to 20 feet away, a man bolted out of the front door, leaving it two-thirds open, and jumped over a six foot tall side fence. Three agents apprehended the running man while the other agents stepped up to the open front door of the house, knocked on the door frame, and yelled, "Police. DEA. George Nguyen. We've got a warrant for you."

There was no answer, but without entering, the agents heard movement coming from inside the residence. From his view into the house through the open door, one agent saw a closed circuit TV capturing video coverage of the law enforcement vehicles parked outside the residence. He also saw movement taking place behind a long curtain-like bedsheet hanging from a stairwell. Upon seeing the TV and silhouettes behind the sheet, four agents entered the house. Once inside, they saw numchucks and throwing knives lying on a table. They also noticed the sound of water running. The agents followed the water sound upstairs and into a bathroom where they found Newman naked in the shower, attempting to wash crystal methamphetamine down the shower drain.

Immediately, the agents arrested Newman for drug possession. After receiving his *Miranda* rights, Newman told the agents that he was the owner of the residence and consented to a search of the house. During the search, the agents found martial arts weapons))knives, throwing stars, numchucks, and a Samurai sword))in the kitchen. They apprehended George Nguyen and two

women who were hiding in the basement. The agents also found a shotgun under a cushion of the living room couch and a pistol hidden under Newman's bed mattress. Newman was convicted of being a felon in knowing possession of firearms.

## II

Newman contends that the district court erred in denying his motion to suppress the shotgun and the pistol, arguing that his consent to search was the fruit of an unconstitutional, warrantless entry into his home. *See United States v. Jaquez*, 421 F.3d 338, 342 (5th Cir. 2005) (holding that a consent to search, even if voluntarily obtained, will not "validate a search that is the product of an unlawful stop-seizure and not an independent act of free will sufficiently attenuated to break the chain of events between the Fourth Amendment violation and the consent."). A warrantless, unconsented entry into a person's home is presumptively unreasonable under the Fourth Amendment unless supported by probable cause and conducted pursuant to exigent circumstances. *United States v. Vega*, 221 F.3d 789, 798 (5th Cir. 2000); *United States v. Jones*, 239 F.3d 716, 719 (5th Cir. 2001)*; Payton v. New York*, 445 U.S. 573, 586 (1980).[1] As the agents had neither a warrant nor consent, the district court held that the "exigent circumstances" exception to the warrant requirement justified the agents' entering Newman's residence.[2] Newman appeals this determination, arguing first that the agents lacked probable cause to enter his home, and second, that the district court erred in finding no exigent circumstances.

---

[1] This is because an unconsented police entry into a person's residence constitutes a search. *See Katz v. United States*, 389 U.S. 347 (1967).

[2] The agents' arrest warrant for Nguyen was not enough to enter the house. *Steagald v. United States*, 451 U.S. 204 (1981) (requiring search warrant to arrest suspect in home of third-party, even if police have arrest warrant).

A

In order to enter a person's residence, even under exigent circumstances, law enforcement first must have probable cause that contraband is inside or that an illegal act is taking place. *Jones*, 239 F.3d at 719 (finding, as a threshold to exigent circumstances, probable cause to believe that illegal drugs were present in the apartment); *Vega*, 221 F.3d at 798 (recognizing that probable cause "to search the residence" is required under an exigent circumstance analysis); *see also Arizona v. Hicks*, 480 U.S. 321, 328 (1987) ("A dwelling-place search, no less than a dwelling-place seizure, requires probable cause . . . .").

For the first time on appeal, Newman argues that the agents did not have probable cause to search his house for illegal activity or contraband.[3] As the issue was not raised below, the district court ruled only on the issues presented and did not make a probable cause determination. Thus, we review only for plain error whether the record supports probable cause. *See United States v. Maldonado*, 42 F.3d 906, 910-12 (5th Cir. 1995); FED. R. CRIM. P. 52(b). Plain error exists when there is a legal error that is both plain and prejudicial. *United States v. Calverley*, 37 F.3d 160, 162-63 (5th Cir. 1994) (en banc). But even if these criteria are satisfied, we still have discretion whether to correct the error, and we only do so if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 162 (*quoting United States v. Atkinson*, 297 U.S. 157, 160 (1936)).

From the limited testimony in the suppression hearing, it is far from clear there was plain

---

[3]     Indeed, it appears that Newman's only argument in the district court was that the agents had time to procure a warrant and should have done so.

error. Probable cause exists when under the "totality of the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). When the agents decided to enter the house, the record supports that they knew four pieces of information which, taken together, amounted to a "fair probability" drugs were inside. *See id.* First, they knew that a drug dealer frequented the house and that, on this particular day, his rental car was parked nearby. Second, they saw a security system had alerted the residents to the agents' approaching, and, third, in response, a man fled the premises and scaled a six-foot iron fence. While the fact that a man dashed out of the house, by itself, is not enough to create probable cause to search the house, *see Vega*, 221 F.3d at n.26, it is among the relevant contextual considerations in the probable cause analysis. *Id.; see also Illinois v. Wardlow*, 528 U.S. 119 (2000) (finding flight from the police to amount to reasonable suspicion). Finally, the agents saw more suspicious movement from behind a curtain, but received no verbal response from the inhabitants. While it would be a close question under a less deferential standard of review, we do not understand the existence of probable cause to be plain error given these facts.

B

Next, Newman contends that no exigent circumstances justified the agents' entering his house, or, alternatively, that the agents manufactured the exigency. The district court's determination as to whether exigent circumstances existed is fact-specific, and we will not reverse it unless clearly erroneous. *United States v. Richard,* 994 F.2d 244, 247 (5th Cir. 1993); *United States v. Vasquez*, 953 F.2d 176, 179 (5th Cir.), *cert. denied sub nom. Gomez v. United States*, 504 U.S. 946 (1992). The burden is on the government to prove the existence of the exigency. *United States v. Thompson*, 700 F.2d 944, 946 (5th Cir. 1983).

"Because it is essentially a factual determination, there is no set formula for determining when exigent circumstances may justify a warrantless entry." *United States v. Blount*, 123 F.3d 831, 837 (5th Cir. 1997), *cert. denied,* 522 U.S. 1138 (1998). We have before held the possibility that evidence will be removed or destroyed, the pursuit of a suspect, and immediate safety risks to officers and others are exigent circumstances that may excuse an otherwise unconstitutional intrusion into a residence. *United States v. Rico*, 51 F.3d 495, 501 (citing *Untied States v. Mendoza-Burciaga*, 981 F.2d 192, 196 (5th Cir. 1992)); *Richard*, 994 F.2d at 247-48.

This case involves officer safety. Exigent circumstances existed if the agents' fear for their safety was reasonable. *See United States v. Howard*, 106 F.3d 70, 76 (5th Cir. 1997) (*citing United States v. Rodea*, 102 F.3d 1401 (5th Cir. 1996)) ("[W]e will not second-guess the judgement of law enforcement officers when reasonable minds may differ."). The government insists, and the district court found, that at the moment the agents decided to enter the house there was reasonable danger to their safety. Here the agents were first confronted with a individual sprinting from the house and scaling a six-foot wrought-iron fence in an attempt to flee from police. *Cf. Vega*, 221 F.3d at n.26 (suggesting that flight from police is probative). Then, when the agents, standing before the doorway, saw human movement from behind a curtain, they knew that people were in the house but were not responding to their verbal announcements. Upon seeing the closed circuit TV system and realizing there were people in the house, the present threat of danger was exacerbated when they realized that the dealer, as well as other residents, likely had been watching them through a TV surveillance system. Because the agents already suspected that a drug dealer was in the house, they were reasonable to correlate violence and weaponry with drug dealing. *See United States v. Rodea*, 102 F.3d 1401, 1408 (5th Cir. 1996) (noting that "firearms are 'tools of the trade' of those engaged in

illegal drug activites.") (*quoting United States v. Ramos*, 71 F.3d 1150, 1158 n. 26 (5th Cir. 1996), *cert. denied*, 517 U.S. 1227 (1996)). At that time, the agents were reasonable to believe that the residents were hiding, potentially with weapons, and watching the agents. Anticipation of a violent confrontation was reasonable.

These events alone would lead a reasonable police officer to anticipate danger, even though the agents did not see any weapons before they entered the house. *See, e.g., Howard*, 106 F.3d at 76 (finding exigent circumstances based on officer safety concerns when there were no visible weapons but the officers suspected there were drugs in a house and there was a crowd of people in front of the house); *Rodea*, 102 F.3d at 1408-10 (upholding exigent circumstances even though officers had no specific knowledge of any weapons being present but because weapons were common in drug deals). Given the highly deferential standard for reviewing the district court's conclusion, we do not think that the district court erred in finding that exigent circumstances justified the agents' entry into Newman's home.

Next, we assess whether the government's own action or inaction was the likely cause of the exigent circumstances. *See Rico*, 51 F.3d at 502 (holding that manufactured exigencies are "an exception to an [exigency] exception."); *Vega*, 221 F.3d at 798-99. Officers may not impermissibly create exigent circumstances by revealing their presence in order to alert suspects who would, in response, destroy evidence or put the police in danger. *See Vega*, 221 F.3d at 800. Here, Newman argues that the exigent circumstances would not have arisen but for the officers' approaching the house and revealing themselves to the occupants.

When determining whether the exigent circumstances are impermissibly manufactured, we consider "the reasonableness and propriety of the investigative tactics that generated the exigency."

*Rico*, 51 F.3d at 502 (*quoting United States v. Duchi*, 906 F.2d 1278, 1284 (8th Cir. 1990)).[4] In the instant case, the agents employed a "knock and talk" so they could ask the residents questions about a suspect for whom they had a warrant. This approach has been recognized as legitimate. *Jones*, 239 F.3d at 720; *United States v. Gould*, 364 F.3d 578, 590 (5th Cir. 2004) (en banc). Thus, the officers did not manufacture an exigency by employing a legitimate investigative tactic.

Newman maintains that even if the officers' initial approach for a "knock and talk" was legitimate, once the officers suspected foul play in the house, a "knock and talk" was no longer reasonable. Namely, the fence jumper's fleeing the premises negated the tactic's validity because officers were then placed on notice of potential illegal activity in the house and should have turned around, instead of creating more drama inside. *See Jones*, 239 F.3d at 721 (defining a "knock and talk" as when "the officers [are] not convinced that criminal activity was taking place and did not have any reason to believe that the occupants were armed."). This Court has already considered an argument of this nature and rejected it. *Id.* at 721. At this point in the timeline, the agents were already in the yard of the house, visible to its occupants. "[B]ecause the [agents] had already entered the . . . area, turning away . . . and exiting the apartment house would have been unreasonable under the circumstances." *Id.* at 722. Moreover, Newman's argument neglects the fence jumper's responsibility in giving rise to the exigency. When the occupants of the house create the circumstances amounting to the exigency in response to a reasonable law enforcement tactic, the agents cannot have manufactured it themselves. *Id.* at 722. Here, a main factor contributing to the exigency was an individual's choice to flee the house. This he did entirely on his own in response to

---

[4] Additionally, exigencies are manufactured if the government's actions are "intentionally taken to avoid the warrant requirement." *Howard*, 106 F.3d at 78; *see Rico*, 51 F.3d at 502. There is nothing in the record here to support an exigency manufactured in bad faith.

the approaching agents, before the police did anything that could be construed as impermissible. The agents did not manufacture the exigency.

We conclude that the agents did not violate the Fourth Amendment by entering Newman's home.[5]

## III

Accordingly, Newman's conviction is AFFIRMED.

---

[5] The district court further held that, once lawfully inside, the agents search of the house was within the constitutional boundaries circumscribed by the exigencies which justified its initiation. *See Mincey v. Arizona*, 437 U.S. 385, 393 (1978). The district court also found that Newman's subsequent consent was voluntary. *See Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) (requiring consent to be voluntary, as established by the "totality of the circumstances"). Because Newman does not specifically dispute these findings on appeal, we will not disturb the district court's conclusions. *See Jones*, 239 F.3d at n.2.