# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 13, 2011

No. 10-50999

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

SHERRY AGUIRRE,

Defendant – Appellant

Appeal from the United States District Court
for the Western District of Texas

Before JOLLY, HIGGINBOTHAM and SOUTHWICK, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Sherry Aguirre was convicted of using a communications facility to facilitate a drug trafficking crime in violation of 21 U.S.C. § 843(b). On appeal Aguirre challenges the district court's denial of her motion to suppress evidence, claiming that the search and seizure of her cell phone was tainted by law enforcement officers' illegal entry into a home where she was a guest. We conclude that the officers' entry was justified by exigent circumstances, that the search and seizure of Aguirre's cell phone occurred under the authority of a valid warrant, and affirm the judgment of the district court.

No. 10-50999

## I.

The search and seizure of Sherry Aguirre's cell phone was a link in the chain of events that unfolded in the wake of the arrest of Arnold Mendoza. Mendoza became a subject of surveillance by the Drug Enforcement Agency after making a controlled sale of cocaine to a police informant. The day of Mendoza's arrest, the agents watching him had reason to believe that he would make another drug deal that evening. Seeing him leave his mobile home at 6:30 P.M. in a tan H2 Hummer, they alerted the local sheriff. A deputy stopped the Hummer for a traffic violation. Mendoza unsuccessfully fled. Marijuana was in plain view and the ensuing search of the vehicle also found nine ounces of cocaine.

Approximately one hour after Mendoza's arrest, several law enforcement officers returned to his residence for an investigative "knock and talk." They knocked on the front door of the mobile home and announced themselves. They received no verbal response. Instead, they saw an occupant look at them through the window, watched that person retreat, and heard several persons "scuffling" and moving hurriedly inside towards the back of the residence. These veteran officers quickly concluded that the occupants were likely destroying drugs and other evidence of narcotics. In response, the officers did not await a warrant or consent to search, but immediately entered the home. During their protective sweep of the residence they found marijuana and drug paraphernalia in plain sight, as well as several plastic baggies floating in the toilet in a bathroom towards the back of the residence. The toilet bowl's water was still rotating from a recent flush.

The officers detained Aguirre and two other occupants of the mobile home for two hours while DEA Special Agent David Friday obtained a search warrant. Warrant in hand the officers uncovered cocaine, marijuana, six marijuana pipes, three grinders, three digital scales, fourteen cell phones, one shotgun, and one

2

revolver. Aguirre's cell phone was lying in plain view on her bed and was one of the phones seized. It was protected by a password that Aguirre provided to the agents. A search of its text messages uncovered several communications discussing "white" and "green," terms believed to refer to cocaine and marijuana, respectively.

Aguirre moved to suppress all evidence obtained in the search of the mobile home, including her cell phone and its incriminating text messages.[1] The district court denied the motion by written order, concluding that the officers' warrantless entry into Mendoza's home was justified by exigent circumstances, and that the search and seizure of Aguirre's cell phone was proper both as a search incident to her arrest and pursuant to a valid warrant. The court also found the evidence in any event was admissible under the good-faith exception to the exclusionary rule. Reserving her right to appeal, Aguirre pleaded guilty to using a communications facility – her cell phone – to facilitate a drug-trafficking crime in violation of 21 U.S.C. § 843(b). She was sentenced to twenty-four months imprisonment, one year supervised release, and a special assessment of $100. This appeal followed.

## II.

Our review of a district court's denial of a motion to suppress is limited. We may affirm on any basis established by the record,[2] considering the evidence presented at the suppression hearing "in the light most favorable to the

---

[1] Sherry Aguirre was not a resident of the mobile home, but had been staying there as a guest for ten days at the time of her arrest. The district court correctly concluded that this extended overnight stay gave Aguirre standing to challenge the police officers' search of the residence. *See Minnesota v. Olson*, 495 U.S. 91, 96–97 (1990) (a defendant's "status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable"); *United States v. Kye Soo Lee*, 898 F.2d 1034, 1037–38 (5th Cir. 1990) (a defendant has standing to contest the search of a place if he has a subjective expectation of privacy in that place that "society would recognize as reasonable").

[2] *United States v. Gomez-Moreno*, 479 F.3d 350, 354 (5th Cir. 2007).

No. 10-50999

prevailing party."[3] A determination of probable cause is a legal conclusion that we review *de novo*,[4] while the existence of exigent circumstances is a factual finding we review for clear error.[5] Under this "highly deferential" standard,[6] we must uphold the district court's ruling so long as it is supported by "any reasonable view of the evidence."[7]

III.

Aguirre first argues that the law enforcement officers' warrantless entry into the mobile home violated the Fourth Amendment, an illegality tainting the search and seizure of her cell phone. The district court concluded that the officers' entry was justified under the exigent circumstances doctrine and implicitly determined that there was probable cause for the entry.

Under the Fourth Amendment, a warrantless search of a person's home is presumptively unreasonable, and it is the government's burden to bring the search within an exception to the warrant requirement.[8] Exigent circumstances is such an exception. It is available only on a showing by the government that the officers' entry into the home was supported by probable cause and justified by an exigent circumstance.[9] "[N]o amount of probable cause can justify a

---

[3] *United States v. Richard*, 994 F.2d 244, 247 (5th Cir. 1993).

[4] *United States v. Zavala*, 541 F.3d 562, 574 (5th Cir. 2008).

[5] *Gomez-Moreno*, 479 F.3d at 354.

[6] *United States v. Blount*, 123 F.3d 831, 839 (5th Cir. 1997).

[7] *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010) (quoting *United States v. Gonzalez*, 190 F.3d 668, 671 (5th Cir. 1999)).

[8] *Payton v. New York*, 445 U.S. 573, 586 (1980); *Gomez-Moreno*, 479 F.3d at 354.

[9] *United States v. Jones*, 239 F.3d 716, 719 (5th Cir. 2001); *see also Arizona v. Hicks*, 480 U.S. 321, 327–28 (1987).

warrantless search or seizure absent [such] exigent circumstances."[10]  In other words, even if the officers had probable cause to search the mobile home, they had to have exigent circumstances to enter without a warrant.

Police officers have probable cause to search a residence if "under the 'totality of the circumstances...there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"[11]  In making this determination, we may consider information learned by the officers during the knock and talk that preceded their entry into the home.[12]  The record contains sufficient evidence to establish that the officers' entry into the mobile home is supported by probable cause.[13]  At the time that the law enforcement officers decided to conduct the knock and talk, they had good reason to believe that they would find narcotics and evidence of drug dealing in the mobile home.  They had just arrested Mendoza, a resident of the home, seizing several ounces of cocaine and marijuana in his possession.  It signifies that when arrested Mendoza was

---

[10] *Horton v. California*, 496 U.S. 128, 137 n.7 (1990) (internal quotation marks and citations omitted).

[11] *United States v. Newman*, 472 F.3d 233, 237 (5th Cir. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

[12] *Id.*

[13] Heretofore, we would precede this discussion by analyzing the threshold issue of whether the law enforcement officers' decision to conduct a knock and talk was a reasonable investigatory tactic, or whether it impermissibly provoked the exigent circumstance.  If we determined that the officers could have obtained a warrant in lieu of conducting the knock and talk or that it was reasonably foreseeable that the knock and talk would create an exigent circumstance, we would not allow the government to use the exigent circumstance doctrine to justify the officers' entry and bypass the warrant requirement. *See, e.g.*, *Gomez-Moreno*, 479 F.3d at 356–57; *Maldonado*, 472 F.3d at 396 (2006); *United States v. Vega*, 221 F.3d 789, 798–99 (5th Cir. 2000); *Richard*, 994 F.2d at 248–49; *United States v. Munoz-Guerra*, 788 F.2d 295, 298 (5th Cir. 1986).  However, this inquiry is no longer proper after the United States Supreme Court's decision in *Kentucky v. King*, 131 S. Ct. 1849 (2011).  That decision narrowed the police-created exigency doctrine adopted by this and other circuits, holding that it may apply so long as "the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment." *Id.* at 1858; *see also id.* at 1859–61.  No such allegation has been made here.

driving directly from the mobile home, creating a likelihood that he possessed these drugs while at the residence.  The officers, aware that Mendoza had previously sold drugs to an informant, had reason to believe that when arrested he was in route to conduct another sale to that informant.  Based on their training and experience, the officers knew that drug dealers often keep assets and drug paraphernalia at their residences.  Together this information established a nexus between the mobile home and Mendoza's illegal drug-related activities.

The officers' entry without a warrant was also justified by the need to halt destruction of evidence.  In determining the presence of exigent circumstance, we employ a non-exhaustive five factor test: "(1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the reasonable belief that contraband is about to be removed; (3) the possibility of danger to the police officers guarding the site of contraband while a search warrant is sought; (4) the information indicating that the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of it and to escape are characteristics in which those trafficking in contraband generally engage."[14]

DEA Special Agent David Friday testified at the suppression hearing that after the officers announced themselves at the front door, they "observed someone look out the window.  And then we heard shuffling, scuffling sound inside the trailer."  The agents' training and prior experience with drug cases suggested that the sudden noises they were hearing were due to the occupants' attempts to destroy evidence when they learned that law enforcement had come to their door.

---

[14] *United States v. Mata*, 517 F.3d 279, 287 (5th Cir. 2008).

No. 10-50999

The facts of this case resemble those in *Newman*, in which we concluded that police officers' warrantless entry into a home was justified by the exigent circumstances and probable cause. The officers there knew that a drug dealer frequented the residence. When they approached the residence they saw suspicious movement behind the curtains, they received no verbal response to their knock, and they observed a resident attempting to flee the premises. While none of these factors alone would necessarily have established that the officers could enter the residence, we concluded that their entry was proper under the totality of the circumstances. The information known to the officers was sufficient to create probable cause that drugs would be found inside.[15] Furthermore, law enforcement officers are aware that there is a high probability that persons in the possession of drugs will attempt to destroy them if they know that the police is at the door.[16] This connection and the noises heard inside of the home created an exigent circumstance.

We are persuaded that the officers' entry into the mobile home was justified by the exigent circumstance of destruction of evidence, and supported by probable cause. It did not violate Aguirre's Fourth Amendment rights and taint the officers' subsequent search and seizure of her cell phone.

IV.

Aguirre mounts three distinct attacks to the search and seizure of her cell phone: (1) the officers executed the search and seizure before a warrant had been issued; (2) the warrant that was eventually issued was not based on probable

---

[15] *Newman*, 472 F.3d at 237. In *Newman*, we reviewed the existence of probable cause under the more deferential plain error standard. That distinction is irrelevant, however, as we concluded that under the facts of the case there was a "fair probability" the officers would find drugs inside the home, the same standard we use here.

[16] *See Munoz-Guerra*, 788 F.2d at 298.

No. 10-50999

cause; and (3) the warrant did not meet the particularity requirement. The district court rejected all three of these arguments.

*1. The search and seizure occurred after the officers obtained a warrant.*

Aguirre contends that the search and seizure of her cell phone occurred before the police obtained a search warrant. After hearing the parties' arguments and testimony at the suppression hearing, the district concluded that this was not the case. Instead, it found that upon discovering Aguirre and the other two mobile home occupants attempting to destroy narcotics that were in plain view, the officers detained them while Special Agent David Friday secured a warrant. The search of the residence – and of Aguirre's cell phone – came on Special Agent Friday's return with a warrant two hours later.

We review a factual finding made by the district court in a denial of a motion to suppress for clear error.[17]  Our review "is particularly deferential where denial of the suppression motion is based on live oral testimony...because the judge had the opportunity to observe the demeanor of the witnesses."[18] Such deference applies here, as the district court based its conclusion on its finding that Special Agent Friday's recitation of events at the suppression hearing was credible.

On appeal, Aguirre points to no evidence showing that Agent Friday's testimony was not credible. Instead she repairs to her own testimony during the suppression hearing that the search and seizure of her cell phone came before Friday's return with the search warrant. There are two flaws in this argument. First, Aguirre never made such a claim at the suppression hearing. She stated that the officers detained her for several hours, and also stated that at some time during her detention an officer unlocked her phone and searched her text

---

[17] *Keith*, 375 F.3d at 348.

[18] *Scroggins*, 599 F.3d at 440 (internal quotations omitted) (alteration in original).

messages.   At most, her testimony can be read as making the ambiguous suggestion that the search occurred in the first two hours of her detention, before a warrant had been issued.

Second, even if Aguirre had so testified at the suppression hearing it would be unavailing.  Aguirre's argument ultimately amounts to a claim that she is more credible than Special Agent Friday.  The district court believed Special Agent Friday's testimony, and Aguirre provides us with no evidence that would support a ruling that the district court committed clear error in crediting Agent Friday's testimony.

*2. The warrant was supported by probable cause.*

Under the Fourth Amendment, a warrant must be based "upon probable cause, supported by oath or affirmation."[19]  Our "review of an allegation that probable cause is lacking is limited to an inquiry of whether the issuing magistrate had a substantial basis for finding the existence of probable cause."[20] Such a substantial basis exists if "given all the circumstances set forth in the affidavit before [the magistrate]...there is a fair probability that contraband or evidence of a crime will be found in a particular place."[21]

To obtain a the search warrant for the mobile home, Special Agent Friday prepared an affidavit that only contained information that the police had before they entered the residence.  The affidavit provided a nexus between Mendoza's drug activities and his home, establishing a likelihood that Mendoza's home would contain evidence of criminal activity.  It recited that Mendoza was under surveillance by the DEA and had been arrested for carrying "substantial

---

[19] U.S. Const. amend. IV.

[20] *United States v. Beaumont*, 972 F.2d 553, 559 (5th Cir. 1992).

[21] *United States v. Wake*, 948 F.2d 1422, 1428 (5th Cir. 1991) (quoting *Gates*, 462 U.S. at 238–39).

amounts of cocaine" and marijuana in his car immediately after leaving his residence and that Agent Friday's experience as an investigator confirmed that drug dealers are likely to keep records of their trafficking activities in their homes.[22] While these circumstances together created no certainty that the police would find evidence of drug trafficking activity in Mendoza's residence, they created a "fair probability" that such evidence would be found, and gave the magistrate a "substantial basis" for concluding such a probability existed. We are persuaded, as was the district court, that the warrant was validly issued on probable cause.

*3. The warrant met the particularity requirement.*

Aguirre argues in the alternative that the search and seizure of her cell phone was improper because the warrant did not particularly describe it as one of the items to be seized. The Fourth Amendment requires that a warrant "particularly describ[e] the place to be searched and the persons or things to be seized."[23] The description in the warrant must be such that a reasonable officer would know what items he is permitted to seize.[24] In reviewing challenges to particularity we read the warrant as a whole, including its accompanying affidavit and attachments.[25] For a failure of particularity, "the appropriate

---

[22] *See Beaumont*, 972 F.2d at 559–60 (sufficient nexus between defendant's home and his drug activity where the affidavit established that defendant had been involved in a purchase of chemicals, an informant claimed he used those chemicals to manufacture drugs, and defendant once sold drugs from another one of his residences); *compare with United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982) (concluding that there was not enough of a nexus between a persons's home and his alleged drug dealing activities because there was no link ever made to his home); *United States v. Gramlich*, 551 F.2d 1359 (5th Cir. 1977) (that defendant was known to be involved in the drug trade and that his one of his co-defendants was arrested for smuggling fifty miles away from the home did not establish a sufficient nexus between illegal activity and the defendant's home).

[23] U.S. Const. amend. IV.

[24] *Steele v. United States*, 267 U.S. 498, 503–04 (1925).

[25] *Beaumont*, 972 F.2d at 560, 561.

No. 10-50999

remedy is for the court to exclude from the evidence in a later criminal action the items improperly taken."[26]

Each item does not need to be precisely described in the warrant. If "detailed particularity is impossible [then] generic language suffices if it particularizes the types of items to be seized."[27] We have upheld searches as valid under the particularity requirement where a searched or seized item was not named in the warrant, either specifically or by type, but was the functional equivalent of other items that were adequately described. For example, in *United States v. Hill*, we upheld the search and seizure of check stubs in the course of the search of a law office suspected of involvement in financial misdealings.[28] Although the warrant in that case did not include "check stubs" in its list of searchable and seizable items, it authorized the search of other items including bank statements, cash receipt journals and cash receipt books. Check stubs, which create contemporaneous and chronological records of payments and transactions, are the functional equivalent of these listed items. We concluded that the warrant was sufficiently particular to allow seizure of the check stubs.[29]

The search warrant in this case authorized the search for items described in Attachment A, a list that catalogued a wide variety of items used to facilitate drug sales and trafficking. It included "records, sales and/or purchase invoices," as well as financial records including books, records, correspondence, and "documentation evidencing the acquisition, concealment, transfer and

---

[26] *United States v. Cook*, 657 F.2d 730, 734 (5th Cir. 1981).

[27] *Williams v. Kunze*, 806 F.2d 594, 598 (5th Cir. 1986) (internal quotation marks omitted).

[28] 19 F.3d 984 (5th Cir. 1994).

[29] *Id.* at 986–89.

No. 10-50999

expenditure of money or assets." The list also authorized the search of personal papers, including address books and telephone directories, and personal assets including computers, disks, printers and monitors utilized in the drug trafficking organization.

Aguirre correctly points out that this list did not include cell phones as items to be searched. However, the cellular text messages, directory and call logs of Aguirre's cell phone searched by law enforcement officers can fairly be characterized as the functional equivalents of several items listed in Attachment A, including correspondence, address books and telephone directories. Furthermore, Special Agent Friday testified during the suppression hearing that "[c]ell phones are highly significant in that they record the transaction of – in some cases the buying and selling of drugs." As such the cell phone in this case, used as a mode of both spoken and written communication and containing text message and call logs, served as the equivalent of records and documentation of sales or other drug activity.

V.

We find no error in the district court's denial of Aguirre's motion to suppress and affirm the judgment entered on Aguirre's plea of guilty.