# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-40691

United States Court of Appeals
Fifth Circuit

**FILED**

September 30, 2015

Lyle W. Cayce
Clerk

CEDRIC CLEVELAND; LEOLA CLEVELAND,

Plaintiffs – Appellants

v.

LIBERTY COUNTY SHERIFF'S DEPARTMENT; LIBERTY COUNTY SHERIFF, In his Official Capacity; LIBERTY COUNTY, TEXAS; MICHELLE WATSON, Individually and in her Official Capacity as a Sergeant; TRAVIS PIERCE, Individually and in his Official Capacity as an Officer of the Liberty County Sheriff's Department; CHAD PAFFORD, Individually and in his Official Capacity as Constable; BRETT AUDILET, Individually and in his Official Capacity as a Deputy; TEXAS DEPARTMENT OF PUBLIC SAFETY; D. BRIAN NICHOLS, also known as Brian Nichols; UNKNOWN OFFICERS, Whose names are presently unknown to Plaintiffs,

Defendants – Appellees

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:13-CV-20

Before REAVLEY, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-40691

Husband and wife Cedric and Leola Cleveland brought an action under 42 U.S.C. § 1983 alleging that various state and county governmental entities and officials violated the Clevelands' constitutional rights and ran afoul of state law when the officials entered and searched the Clevelands' home without a warrant. This search resulted in the discovery of marijuana plants and guns and eventually in Mr. Cleveland's arrest for being a felon in possession of a firearm, as well as the revocation of his parole. The magistrate judge, presiding with the consent of the parties, dismissed some claims as to some defendants and granted summary judgment in favor of the defendants on the remaining claims. The Clevelands appealed.

I.

The Clevelands, who are proceeding pro se on appeal, contend that the magistrate judge erred in determining that some of the defendants were immune from suit under the Eleventh Amendment. The magistrate judge, however, dismissed only the claims against the Texas Department of Public Safety on the basis of sovereign immunity. We review de novo the grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), viewing as true the well-pleaded factual allegations in the complaint and construing them in the Clevelands' favor. *See Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). The Texas Department of Public Safety is an agency or department of Texas, and Texas has not waived its sovereign immunity. Thus, the Eleventh Amendment shields the department from suit in federal court. *See Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013); *see also Reimer v. Smith*, 663 F.2d 1316, 1322–23 (5th Cir. Dec. 1981) (holding the Texas Department of Public Safety immune from suit under the Eleventh Amendment). Moreover, the exception to the sovereign immunity doctrine for ongoing violations of federal law does not help the Clevelands because it applies only to suits against

No. 14-40691

state officials in their official capacities and not to suits against state entities. *See Raj*, 714 F.3d at 328. The Clevelands have not identified an ongoing violation of federal law, and they have sought only monetary damages. *See Ex parte Young*, 209 U.S. 123, 148–49, 159–60 (1908); *Fontenot v. McCraw*, 777 F.3d 741, 751–52 (5th Cir. 2015). The district court did not err in dimissing the Texas Department of Public Safety.

## II.

The Clevelands also object to the actions of various individual law enforcement officers that led to the search of the Clevelands' mobile home and seizure of incriminating evidence. The relevant events occurred when several law enforcement officers went to the Clevelands' home to investigate the Clevelands, either for dogfighting or illegal possession of firearms.[1]

No one answered when the officers knocked, though Leola Cleveland was home. While some officers knocked on the front door, others, including Officer Brett Audilet, circled around the back of the trailer. Doing so, Officer Audilet noticed there was a large marijuana plant clearly visible through the mobile home's windows. After this discovery, Sergeant Michelle Watson contacted Officer Brian Nichols, who came to view the marijuana plant so that he could procure a search warrant, which he estimated could take up to two hours.

Cedric Cleveland encountered Officers Travis Pierce and Chad Pafford on the road leading to his home and approached the officers. He asked them why police were at his home and notified them that his wife was afraid to open the door. The officers escorted him to his house. Upon arrival, Cedric Cleveland told Officer Nichols that he would let the officers inside the house, but he did not want them to kick down the door and scare his wife. Cedric

---

[1] The district court considered this issue an immaterial disputed fact. We agree that resolution of this factual dispute is not material to the analysis.

3

No. 14-40691

Cleveland called out to his wife and told her that he was with the officers and that she could come out.  Sergeant Watson exclaimed aloud that she saw movement at the same time as Officer Nichols saw a human shape cross in front of the window adjacent to the front door.  Officer Nichols and Cedric Cleveland testified that they could hear the sound of a person running through the house after Cedric Cleveland called out to his wife.  Officer Nichols immediately tried to kick down the door but failed, so another officer did so.

Shortly after officers entered the Clevelands' home, they performed a protective sweep of the residence.  Then Officer Nichols and Sergeant Watson requested permission to search the house.  The parties do not dispute that, at some point, Officer Nichols and Sergeant Watson had all of the officers leave the residence so they could discuss a consent search with the Clevelands.  Officer Nichols had Cedric Cleveland's handcuffs taken off, and the Clevelands sat at the kitchen table.  Thereafter, the officers recorded a conversation with the Clevelands in which the Clevelands consented to the search of their residence and signed a consent form.  During that conversation, the officers stood at the kitchen table and the Clevelands sat.  On the recording the tone of the conversation was calm and professional, and the officers never physically or verbally threatened the Clevelands.

However, the Clevelands claim that before the recorder was activated, Officer Nichols threatened to "flip" the Clevelands' home if they did not consent to a search.  Cedric Cleveland said that he refused to grant consent at first, but ultimately consented because his wife had antiques and other valuables that he wished to protect from destruction or harm.  Following consent, the officers searched the whole home and found multiple marijuana plants, guns, and ammunition.  Cedric Cleveland was arrested for being a felon in possession of

4

a firearm, but the evidence from the search was suppressed in state court. This suit under § 1983 followed.

From this sequence of events, the Clevelands first assert in their appellate briefing that Officer Pierce violated their constitutional rights by allegedly reporting to the police dispatcher that Cedric Cleveland was under investigation for possessing a firearm as a felon. The Clevelands maintain this supports their theory that officers fabricated their stated reason for being at their home—to investigate complaints of dogfighting. The Clevelands also contend that Officer Pafford unconstitutionally handcuffed Cedric Cleveland. However, in the district court, the Clevelands did not allege any specific actions undertaken by either Officer Pierce or Officer Pafford, much less present summary judgment evidence to support the assertions they make now. We decline to address these new claims raised for the first time on appeal. *See Williams v. Ballard*, 466 F.3d 330, 335 (5th Cir. 2006).

The Clevelands also continue to press their claims that Officers Audilet and Nichols and Sergeant Watson violated their Fourth Amendment right to be free from unlawful searches and their rights to due process, equal protection, and freedom of association. The magistrate judge granted summary judgment in favor of the officials on the basis that they were entitled to qualified immunity.[2]

We review a grant of summary judgment de novo. *Nickell v. Beau View of Biloxi, L.L.C.*, 636 F.3d 752, 754 (5th Cir. 2011). Summary judgment is appropriate if the evidence shows that there is no genuine dispute as to any

---

[2] Sergeant Watson did not appear in the district court, apparently because she was not properly served with process. However, as the district court determined, a defendant who has not appeared can nonetheless benefit from the defenses raised by other defendants who have appeared. *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001). Accordingly, we attribute to Sergeant Watson the arguments made and evidence presented by the other defendants in their summary judgment submissions.

material fact.  *Id.*; FED. R. CIV. P. 56(a).  "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000)). "A fact issue is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id.*  We view all facts and draw all inferences in the light most favorable to the party opposing summary judgment.  *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).

A government official performing a discretionary function is entitled to qualified immunity unless his actions violate a clearly established right of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Where, as here, a defendant invokes qualified immunity in a motion for summary judgment, it is the plaintiff's burden to show that the defendant is not entitled to qualified immunity.  *See Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).  That is, the plaintiff must put forward evidence that (1) the official's conduct violated a constitutional right and (2) the constitutional right was clearly established so that a reasonable official in the defendant's situation would have understood that his conduct violated that right.  *See id.*; *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

The Clevelands argue that Officers Audilet and Nichols conducted an illegal search when they looked through a window of the Clevelands' house and saw marijuana plants, and when the officials traversed the Clevelands' property, allegedly solely to obtain information.  The Clevelands also contend that Officer Nichols illegally initiated the warrantless entry into their home by attempting to kick down their door.  The Clevelands contend that Sergeant Watson's behavior in calling out to the other officers that she saw movement in the house created the exigent circumstances that led to the warrantless

entry into their home. The Clevelands note that the evidence produced from the search was suppressed in state court, but they did not provide the district court or this court with the transcript of the suppression hearing or any information about why the evidence was suppressed.

Construing all facts and inferences in favor of the Clevelands, we hold that they have not raised a genuine dispute of material fact regarding whether peering through the Clevelands' window and forcibly entering their home violated clearly established law, given the officers' knowledge that someone was home who was not answering the door. First, the Clevelands have not shown it violated clearly established law for the officers to view the marijuana plant: the mobile home was visible from the road and was not surrounded by a privacy fence or bushes, and the backyard and back of the house were freely accessible without a gate or posted signage, except for a "Do Not Enter" traffic sign in the back of the yard that could not be seen from the front or sides of the house. *See generally Hardesty v. Hamburg Twp.*, 461 F.3d 646, 654 (6th Cir. 2006) (collecting cases for the proposition that it does not violate the Fourth Amendment to proceed through curtilage to a back door after knocking on a front door proves unsuccessful); *see also United States v. Thomas*, 120 F.3d 564, 568, 571–72 (5th Cir. 1997).

The Fourth Amendment presumes that a warrantless search of a home "is presumptively unreasonable" unless police officers have probable cause to suspect criminal activity and exigent circumstances justify an immediate entry. *See United States v. Aguirre*, 664 F.3d 606, 610 (5th Cir. 2011); *see also Horton v. California*, 496 U.S. 128, 137 n.7 (1990). "Police officers have probable cause to search a residence if under the totality of the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Aguirre*, 664 F.3d at 610 (quoting

*United States v. Newman*, 472 F.3d 233, 237 (5th Cir. 2006)).  "[W]here the complained of conduct is a law enforcement warrantless search of a residence, qualified immunity turns not only on whether it was then clearly established that such a search required probable cause and exigent circumstances, but *also* on whether it was then clearly established that the circumstances with which the officer was confronted did not constitute probable cause and exigent circumstances."  *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1997) (quoting *Anderson v. Creighton*, 483 U.S. 635, 635 (1987)).  Considering that the officers saw a marijuana plant through the window of the mobile home, we conclude that the Clevelands have not shown it was clearly established that the officers lacked probable cause to enter the residence.  *See Aguirre*, 664 F.3d at 611.

"[T]here is no set formula for determining when exigent circumstances may justify a warrantless entry," but "the possibility that evidence will be removed or destroyed . . . and immediate safety risks to officers and others are exigent circumstances that may excuse an otherwise unconstitutional intrusion into a residence."  *Newman*, 472 F.3d at 237 (citations omitted). Here, Officer Nichols claimed that he entered the residence because he knew someone was inside, he knew at least one marijuana plant was in the house, his experience told him that people will often attempt to destroy evidence in these situations,  he thought the marijuana plant could be torn up and flushed down the toilet, he knew it would take between one and two hours to obtain a warrant, and after he and Cedric Cleveland announced their presence, they both heard the sound of someone running through the house.  Another officer, allegedly Sergeant Watson, saw movement within the house.  Construing these facts in the light most favorable to the Clevelands, they have not shown that it violated clearly established law to forcibly enter their mobile home in light of

these facts.[3] *See Aguirre*, 664 F.3d at 610–12 (concluding officers' entry into a mobile home was justified by probable cause of drug activity, the general high probability that persons with drugs will attempt to destroy them when discovered by the police, and the fact that police saw an occupant looking out the window before hearing shuffling sounds inside the trailer); *see also Waganfeald v. Gusman*, 674 F.3d 475, 485 (5th Cir. 2012) (finding no clearly established law showing a defendant violated the plaintiffs' rights, noting the plaintiffs "pointed us to no such authority, and we . . . found none").

Additionally, the mere fact that the evidence was suppressed in state court does not, by itself, raise a factual issue about whether the officers violated the Clevelands' clearly established rights. *See, e.g.*, *Vickers v. Georgia*, 567 F. App'x 744, 746–47 (11th Cir. 2014) (acknowledging state court's suppression of evidence but finding officials did not violate clearly established law after an independent review of the facts); *Buchanan v. Kelly*, 592 F. App'x 503, 504–07 (7th Cir. 2014) (same); *Murphy v. Bendig*, 232 F. App'x 150, 152–53 (3rd Cir. 2007) (similar); *Richmond v. City of Brooklyn Ctr.*, 490 F.3d 1002, 1005–09 (8th Cir. 2007) (similar); *Hardesty*, 461 F.3d at 651 (holding a state court's

---

[3] We note that the Clevelands do not argue their rights were violated because the officers entered the residence without knocking and announcing their presence. Leola Cleveland does not dispute that the officers initially knocked on her door, nor that she knew the police were outside by the time the officers knocked on her door a second time later that night. From the officers' perspective, Cedric Cleveland testified that before the officers entered the residence, he called out to Leola Cleveland to come to the door and that he was "with the police." Officer Nichols testified that before law enforcement officers heard Leola Cleveland running inside the house and broke down the door, he knocked and announced his presence and status as a law enforcement officer. Therefore, this case does not implicate whether the Clevelands' rights were violated by a failure to knock and announce the presence of law enforcement before entry into the residence. *Cf. Trent v. Wade*, 776 F.3d 368, 377 (5th Cir.) (affirming the denial of qualified immunity where there was "no dispute that [an officer] neither knocked nor announced his presence prior to entering" a home and where there were disputed factual issues regarding whether the officer had reasonable suspicion to conclude occupants of the home were aware of his presence, authority, and purpose), *reh'g en banc denied*, ___ F.3d ___, 2015 WL 5432089, at *1 (Sept. 14, 2015).

suppression did not have preclusive effect in the plaintiff's § 1983 suit regarding the legality of a search). Because the Clevelands did not proffer the state court's findings as part of the record in the district court, we need not decide the degree of deference, if any, to be given those findings.

Finally, the Clevelands assert that Officer Nichols coerced them to consent to a search by threatening that he would "flip" the house if he was required to secure a warrant. When consent is challenged, we normally inquire whether the government has shown that it obtained voluntary consent through a totality-of-the-circumstances, six-factor analysis. *See United States v. Arias-Robles,* 477 F.3d 245, 248 (5th Cir. 2007). However, the Clevelands have failed to adequately brief this claim, even construing their briefs liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (noting pro se filings receive liberal construction); *McCreary v. Richardson*, 738 F.3d 651, 656 (5th Cir. 2013) (observing that to overcome a qualified immunity defense, "we must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question"); *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993) ("Fed.R.App.P. 28[] requires that the appellant's argument contain the reasons he deserves the requested relief with citation to the authorities, statutes and parts of the record relied on."). The Clevelands' initial briefs only fleetingly mention consent, without citation to any relevant authority that would suggest the officers violated clearly established law in obtaining and relying on the Clevelands' consent. Although their reply brief addresses consent and other issues in somewhat more detail,[4] it raises several

---

[4] In their reply brief, liberally construed, the Clevelands contend for the first time that (1) Sergeant Watson fabricated statements that officers received tips regarding dogfighting at the Clevelands' home and (2) the amount of time that elapsed between the officers' entry into the home and the Clevelands' consent to the search rendered the search illegal. The Clevelands did not raise these contentions in the district court, much less provide evidence to support them. Accordingly, we do not address them. *See Carmona v. Sw. Airlines Co.*, 536 F.3d 344, 347 n.5 (5th Cir. 2008); *Williams*, 466 F.3d at 335.

points for the first time and fails to cite relevant authority showing Officer Nichols's actions in obtaining consent violated clearly established law. Generally, arguments raised for the first time on appeal are waived, and issues raised for the first time in a reply brief are abandoned. *See Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 877 n.10 (5th Cir. 2009); *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257 n.2 (5th Cir. 1996).

The Clevelands failed to meet their burden to show that Officers Audilet and Nichols and Sergeant Watson were not entitled to qualified immunity on the Fourth Amendment claims. *See Brown*, 623 F.3d at 253. Moreover, the Clevelands' due process, equal protection, and freedom of association claims are simply restatements of their Fourth Amendment claims and rely on the same factual allegations; therefore, the Clevelands have not shown that the district court erred in dismissing these claims as well. The Clevelands have abandoned their remaining claims by failing to raise them in this court. *See Hughes v. Johnson*, 191 F.3d 607, 613 (5th Cir. 1999). Accordingly, we decline to address them. *See Brinkmann v. Dall. Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987).

The district court's judgment is AFFIRMED.