In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-12-00514-CR**
**NO. 09-12-00518-CR**

_____

**MICHAEL WADE PACHE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 11-09-09587 CR, Counts 1 and 2**

**OPINION**

Michael Wade Pache was indicted for two drug offenses: possession with intent to deliver/manufacture a controlled substance (methamphetamine) and possession of marijuana. Challenging the officers' entry into and search of his home, Pache filed a motion to suppress. After the trial court denied his motion, he pleaded guilty under a plea bargain. The trial court sentenced Pache to six years in

1

prison on the methamphetamine offense and 105 days in state jail on the marijuana offense. Pache appeals from the denial of his motion to suppress.

We conclude that the officers had probable cause to believe that a crime had been or was being committed in the residence, and that there were exigent circumstances permitting entry into the home. We affirm the trial court's judgment.

## STANDARD OF REVIEW

We review the trial court's denial of a motion to suppress under a bifurcated standard. *Baird v. State*, 398 S.W.3d 220, 226 (Tex. Crim. App. 2013). We afford almost total deference to the trial court's determination of facts. *Id*. The trial court is the sole arbiter of questions of fact and of the weight and credibility to give testimony. *Id.* When a trial judge makes written findings of fact, the reviewing court examines the record in the light most favorable to the ruling and upholds those fact findings so long as they are supported by the record. *Id.* We review de novo the legal significance of the facts as found by the trial court. *Id*.

## THE FACTS

Sergeant David Womack received a tip from an informant that narcotics were being sold out of a particular trailer home. Womack contacted officers Thompson and Pieper regarding a "knock-and-talk on the residence." The three officers arrived in separate vehicles. The gate to the property was open. The

officers testified they did not see any "no trespassing" signs as they drove through the gate. They drove up a dirt driveway to the trailer. Womack and Thompson went to the front door. Detective Pieper went to the back yard.

Womack and Thompson testified that when they got to the front door, they could smell a very strong odor of marijuana coming from inside the trailer. Pache answered the door and Womack identified himself. Thompson testified Pache tried to slam the door, but for safety reasons, Thompson prevented him from shutting the door. Pache ran through the trailer. Deputy Thompson tackled Pache in the trailer. Pache was handcuffed, and Womack and Thompson put him in a chair. Lieutenant Cash arrived at the scene, and Pache was informed of his rights. Cash asked Pache for consent to search the trailer. Pache consented to the search.

Detective Pieper, the officer stationed in the back yard, testified that when she went to the side of the property, she noticed that the curtains in the trailer's back window were open, and she saw marijuana plants. She explained that as soon as she heard the commotion inside the trailer, she ran to the front door and went inside. She testified that she and the other officers did not walk through the trailer prior to Pache's consent to the search, and that once consent was given, Pache told them where things were.

3

Two defense witnesses testified they remembered the presence of a "no trespassing" sign by the gate at the entrance to the property, and the sign had been there for a long time. Pache testified that the sign was on his property. He explained that he took pictures a few days after he was arrested and released from jail on these charges, and that those pictures show the sign. Pache further testified that he did not consent to the search. He explained he answered the officers' knock on the door and then refused to let them come in and talk to him. They entered anyway.

## WARRANTLESS ENTRY

Pache argues the trial court erred in denying his motion to suppress because the officers entered his property without a warrant. He asserts that his yard is curtilage, and constitutionally protected from the officers' presence on his property. He contends his consent was tainted by the illegal entry, and involuntary. The State maintains that probable cause and exigent circumstances gave the officers authority to enter the home and that Pache voluntarily consented to the search of his home.

An officer's warrantless entry into a home is presumptively unreasonable. *Turrubiate v. State*, 399 S.W.3d 147, 151 (Tex. Crim. App. 2013). At the Fourth Amendment's "'very core' stands 'the right of a man to retreat into his own home

4

and there be free from unreasonable governmental intrusion.'" *Florida v. Jardines*, 133 S.Ct. 1409, 1412, 185 L.Ed.2d 495 (2013) (quoting *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961)). The area immediately surrounding and associated with the home -- the curtilage -- is part of the home itself for Fourth Amendment purposes. *Id.* at 1414. As the Court explained, "This right would be of little practical value if the State's agents could stand in a home's porch or side garden and trawl for evidence with impunity; the right to retreat would be significantly diminished if the police could enter a man's property to observe his repose from just outside the front window." *Id.* Nonetheless, the Supreme Court reaffirmed its holding that "[a] police officer not armed with a warrant may approach a home in hopes of speaking to its occupants, because that is 'no more than any private citizen might do.'" *Id.* at 1412 (quoting *Kentucky v. King*, 131 S.Ct. 1849, 1862, 179 L.Ed.2d 865 (2011). There is an "implicit license typically permit[ting] the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Id.* at 1415. Under the circumstances here, Womack and Thompson could go to the front door and knock.

But did they have the authority to enter the home? In the context of a warrantless entry and search, the State has the burden of showing that probable

cause existed at the time the search was made and that exigent circumstances requiring entry into the home made obtaining a warrant impracticable. *Turrubiate*, 399 S.W.3d at 151. Probable cause exists if reasonably trustworthy circumstances within the knowledge of the officers on the scene would lead them to reasonably believe that evidence of a crime will be found. *Id*. If probable cause exists, there may be exigent circumstances that require immediate, warrantless entry by an officer. *Id*. Examples of exigent circumstances include providing aid to persons whom law enforcement reasonably believe are in need of it; protecting an officer from persons reasonably believed to be present, armed, and dangerous; or preventing the destruction of evidence. *Id*. The State argues that Pache was going to destroy evidence.

The odor of marijuana and the tip that narcotics were being sold out of the residence led the officers to believe a crime was being committed. *See Parker v. State*, 206 S.W.3d 593, 596-601 (Tex. Crim. App. 2006) (totality of circumstances). But probable cause is not enough to permit entry into the home. As the Court of Criminal Appeals explained in *Turrubiate*, exigent circumstances are not present to permit an officer's entry into the home just because the officer, who has identified himself as an officer and made his presence known to the occupant, has probable cause to believe that there are illegal narcotics in a home, and a

6

noticeable odor of marijuana is emanating from the home. *Turrubiate*, 399 S.W.3d at 152. The Court rejected an approach based on "generalizations regarding the behavior of individuals who are in possession of illegal narcotics, namely, that they will take immediate action to destroy evidence if the police are at their door and an odor of marijuana fumes is present." *Id.* The record must show proof regarding the imminent destruction of evidence based on affirmative conduct by those in possession of narcotics in a particular case. *Id.* at 153.

The only facts purportedly establishing exigent circumstances in *Turrubiate* were the odor of marijuana and the defendant's knowledge that a police officer was at his door. *Id.* at 154. "Lacking [wa]s the additional evidence discussed in *King* of attempted or actual destruction based on an occupant's movement in response to the police knock. We require some evidence of exigency beyond mere knowledge of police presence and an odor of illegal narcotics." *Id.* at 154 (citation and footnote omitted).

Womack had a tip that narcotics were being illegally sold out of the home. The officers went to the home. The trial judge was free to believe the officers' testimony that they saw no signs forbidding trespass. The odor of an illegal drug was emanating from the trailer. Once Pache opened the door and saw the officers, he started running through the trailer. Given the context, the officers could

7

reasonably believe and the trial court could reasonably conclude Pache was trying to get to the illegal drug and destroy it. We conclude Thompson and Womack had probable cause that a crime was being committed and that exigent circumstances necessitated their immediate entry into the home. It was reasonable to believe that a delay to obtain a warrant would result in the destruction of the evidence. If an officer has probable cause coupled with an exigent circumstance, the Fourth Amendment will tolerate a warrantless search. *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007); *see also King*, 131 S.Ct. 1849 at 1862 ("Occupants who choose not to stand on their constitutional rights but instead elect to attempt to destroy evidence have only themselves to blame for the warrantless exigent-circumstances search that may ensue.").

Relying on *Cooksey v. State*, 350 S.W.3d 177 (Tex. App.—San Antonio 2011, no pet.), Pache contends that the front yard and back yard of his property are curtilage in which he has an expectation of privacy. *See Jardines*, 133 S.Ct. at 1414 (describing curtilage as the area immediately surrounding and associated with the home); *State v. Betts*, 397 S.W.3d 198, 206-07 (Tex. Crim. App. 2013). He specifically argues that Detective Pieper was not authorized to enter the back yard without a warrant and that a search occurred, because Pieper observed the marijuana plants through the window. But events that occurred at the front door

8

gave the officers authority to enter the home, and there is testimony in the record that the search for the evidence in the trailer was not conducted until after Pache was notified of his rights and had given consent to the search.

Pache argues the consent was involuntary because the officers' entry into his home was illegal, and that the taint in the illegality had not dissipated by the time consent was given. We have rejected his argument that the entry was illegal. We overrule Pache's issue. The trial court's judgments are affirmed.

AFFIRMED.

_____
DAVID GAULTNEY
Justice

Submitted on August 8, 2013
Opinion Delivered October 16, 2013
Publish

Before McKeithen, Gaultney and Kreger, JJ.

9