In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00029-CR
_____

SURI SADI CONTRERAS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 411th District Court
Polk County, Texas
Trial Cause No. 24796

MEMORANDUM OPINION

After the trial court denied his motion to suppress evidence, appellant Suri Sadi Contreras (Contreras or Appellant) pleaded guilty to the felony offense of possession of a controlled substance with intent to deliver. *See* Tex. Health & Safety Code Ann. § 481.112(d) (West 2017). The trial court found Contreras guilty and, in accordance with the plea agreement, assessed punishment at twenty-two years of confinement. On appeal, Contreras challenges the trial court's denial of Contreras's

1

motion to suppress. None of the parties requested findings of fact or conclusions of law from the trial court and none were provided by the trial court.

We affirm the trial court's judgment.

## Suppression Hearing

On or about November 16, 2016, Contreras filed a motion to suppress, which alleged, in relevant part, that all tangible evidence seized and statements illegally obtained should be suppressed because they were seized without a warrant, probable cause, or other lawful authority in violation of Contreras's rights pursuant to the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 9, 10 and 19 of the Constitution of the State of Texas. Contreras alleged that "[t]he actions of the Polk County Sheriff's Office violated [Contreras's] constitutional and statutory rights[.]" Contreras also alleged in his written motion to suppress that the affidavit upon which the search warrant was issued was improperly and illegally executed, and that the warrant was illegally issued because of a lack of probable cause.

At the suppression hearing, the Defendant objected to the search warrant on the basis that it was "improperly secured" and "not properly given under probable cause[,]" and then stated, "other than that, I don't object to it being offered." The

trial court overruled the defendant's objection.[1] Contreras also argued that the encounter was a show of force by the police and a raid rather than a valid "knock and talk."

The State argued at the suppression hearing that while the State was conducting a "knock and talk," the "situation changed" when the officers heard noises inside the house that led them to believe that evidence was being destroyed and that officer safety was also an issue, thereby creating exigent circumstances. The State argued in the alternative that Contreras and his co-defendant abandoned the drugs when they put it through a hole in the ground or floor and then it became the property of the owner of the real estate (someone other than Contreras), and that Contreras lacked standing to challenge the search warrant. The trial court denied the motion to suppress.

Evidence Presented At The Suppression Hearing

At the suppression hearing, the State presented testimony from a Polk County Sheriff's Deputy. The Deputy testified that he conducted a traffic stop on Ricky Freeman on May 4, 2016. According to the Deputy, Freeman was found to be in

---

[1] The defendant did not object to the video or audio recording. On appeal, Contreras also does not challenge the affidavit upon which the search warrant was issued, nor does he make specific complaints about the search warrant that was obtained by the officers after entry into the building.

possession of drugs at the time of the stop, and Freeman informed the Deputy that he had obtained the drugs from two "cartel members[.]" The Deputy testified that he got his Corporal involved in the investigation and that one of the people involved in the traffic stop was Norma Felipe. According to the Deputy, Freeman told the Deputy that the building where Freeman obtained the drugs was behind a residence in Polk County, Texas, the building "looked like a portable building," and it was located on Felipe's family's property. The Deputy testified that he was familiar with the building. The Deputy explained that Freeman also informed him that the alleged "cartel members" were armed and had a "large cache of drugs[]" inside the building. The Deputy testified that after the traffic stop he did not believe he had probable cause to get a search warrant for the building, and he "wanted to conduct a knock and talk in order to see if they would allow [him] entry and talk to them to see if [he] could gain probable cause[.]"

The Deputy, his Corporal, and "a few other officers," possibly four or five, all dressed in uniforms, went to the building later that night "to confirm and ask [the occupants of the building] about it, to conduct a knock and talk." The Deputy provided additional details regarding the encounter at the building:

> [Prosecutor]: Once you announced yourselves and knocked on the door, did you hear something happening inside the building?

[Deputy]: Yes, ma'am, lots of moving, lots of loud noise. Sounded like they were either getting something ready or trying to destroy evidence.

[Prosecutor]: So what did you do?

[Deputy]: We kept announcing ourselves over and over and over. Corporal Javier was saying in Spanish to open the door. I was telling them to open the door. The co-defendant looked out of the window several times, seeing us. I mean, he made eye contact with Corporal Javier.
 Eventually I kicked the door; and we were able to take [Contreras and a co-defendant] into custody, actually to detain them so that we were -- we were able to secure the scene.

According to the Deputy, after entering the building he did a protective sweep of the building for law enforcement's safety. The Deputy testified that he saw in plain view torch lighters and a scale, which he explained are items commonly used in dealing narcotics, and it made him believe that there had been drug activity in the building. He explained he also saw a "stand-up shower[]" torn away from the wall and a hole in the floor, which he believed to be consistent with one of the officer's reports that someone "may have been trying to get out of the back at one point in time." After obtaining a search warrant, law enforcement searched the building and found the following items: a meth pipe in the bedroom area, a large quantity of methamphetamine that had been dropped through the hole where the shower had been, a small safe, an Altoids can full of Xanax, an AR-15 concealed under a desk, a knife, and a collapsible baton. The search warrant and the video recording from a

body camera were both admitted into evidence. The Deputy agreed that the officers had their guns drawn when they approached the building.

Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We review the trial court's factual findings for an abuse of discretion, but review the trial court's application of the law to the facts de novo. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). At a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony, and a trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *Valtierra*, 310 S.W.3d at 447; *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007) (quoting *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

In reviewing a trial court's ruling, the appellate court does not engage in its own factual review. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts, "especially if those are based on an assessment of credibility and demeanor." *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). We give the same

6

deference to the trial court's conclusions with respect to mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We review purely legal questions de novo as well as mixed questions of law and fact that do not turn on credibility and demeanor. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011); *Crain*, 315 S.W.3d at 48.

In the absence of any findings of fact, either because none were requested or none were spontaneously made by the trial court, an appellate court must presume that the trial court implicitly resolved all issues of historical fact and witness credibility in the light most favorable to its ultimate ruling. *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011) (citing *Ross*, 32 S.W.3d at 857); *see also Aguirre v. State*, 402 S.W.3d 664, 667 (Tex. Crim. App. 2013) (Cochran, J., concurring) ("in the absence of specific findings, an appellate court's hands are tied, giving it little choice but to 'view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record[]'") (quoting *Ross*, 32 S.W.3d at 855). We afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law

7

applicable to the case. *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014); *Arguellez v. State*, 409 S.W.3d 657, 662-63 (Tex. Crim. App. 2013); *Ross*, 32 S.W.3d at 855.

A motion to suppress evidence is a specialized means of objecting to the admissibility of evidence. *Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981). As such, a motion to suppress must meet the requirements of an objection. *Carroll v. State*, 911 S.W.2d 210, 218 (Tex. App.—Austin 1995, no pet.); *Mayfield v. State*, 800 S.W.2d 932, 935 (Tex. App.—San Antonio 1990, no pet.). To preserve an issue involving the admission of evidence for appellate review, the objection must inform the trial court why, or on what basis, the evidence should be excluded, but generally need not spout "magic words." *Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009); *see also* Tex. R. App. P. 33.1(a)(1)(A) (error is preserved when the record shows that a "complaint was made to the trial court by a timely request, objection, or motion that . . . stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context[]").

The objection must be sufficiently clear that opposing counsel and the trial court have an opportunity to address or correct the purported deficiency. *Ford*, 305

8

S.W.3d at 533. It is well established that "shotgun objections" generally citing many grounds for an objection without argument preserve nothing for appeal. *Johnson v. State*, 263 S.W.3d 287, 290 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd, untimely filed); *Webb v. State*, 899 S.W.2d 814, 818 (Tex. App.—Waco 1995, pet. ref'd). Likewise, a motion to suppress asserting multiple grounds that are not argued during the suppression hearing will not preserve the subsequently unasserted grounds for appeal. *See Johnson*, 263 S.W.3d at 289-90; *Morgan v. State*, No. 05-94-01135-CR, 1996 WL 223551, at **4-5 (Tex. App.—Dallas Apr. 30, 1996, pet. ref'd) (not designated for publication). Additionally, an issue on appeal that does not comport with the objection made at the suppression hearing or trial presents nothing for appellate review. *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999); *Harris v. State*, 475 S.W.3d 395, 403 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd); *Wright v. State*, 154 S.W.3d 235, 241 (Tex. App.—Texarkana 2005, pet. ref'd).

Analysis

In a single appellate issue, Contreras argues the trial court erred in denying his motion to suppress because Contreras "was denied fourth amendment protection of unwarranted search and seizure as violated by law enforcement during their 'knock and talk[.]'" Appellant specifically argues on appeal that law enforcement's

actions did not constitute a "knock and talk" but instead amounted to "a raid by armed law enforcement personnel[,]" thereby violating his "fourth amendment right and Texas Constitutional right."

The State maintains that after receiving information from Freeman regarding "drug cartel" members and a cache of drugs, and while conducting a "knock and talk," exigent circumstances developed that justified the warrantless entry. According to the State, the exigent circumstances were that the occupants were attempting to destroy evidence. The State also contends there was an issue of officer safety. In the alternative, the State argues that even if the initial entry into the building without a warrant was improper, Contreras does not have standing to contest the seizure of the methamphetamine because he had abandoned the property prior to any police misconduct.[2]

The Fourth Amendment and Article I, Section 9 of the Texas Constitution, protect a citizen from unreasonable searches and seizure. *See* U.S. Const. amend.

---

[2] Contreras asserts in the "Statement of Facts" section of his appellate brief that "[t]he suppression hearing was based on the resulting entrance, search and arrest of Appellant and his co-defendant Javier Martinez Calderon at their residence." The State in its appellate brief noted that "the State has no objection to the appellant's statement of the facts, except that appellant refers to the structure at issue as a residence, while the testimony described it as a building." At the suppression hearing, the Deputy made a reference to the structure as a "residence" but then he also explained that it was a building behind a residence.

IV; Tex. Const. art. I, § 9. When a defendant moves to suppress evidence based on a warrantless search, the State has the burden of showing that probable cause existed at the time the search was made and that one of the exceptions to the warrant requirement existed, such as exigent circumstances, requiring immediate entry, making obtaining a warrant impracticable. *McNairy v. State*, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991). Probable cause exists when reasonably trustworthy facts and circumstances within the knowledge of the police officer on the scene would lead him to reasonably believe that evidence of a crime will be found. *See id.* If probable cause exists, exigent circumstances may require immediate, warrantless entry by officers who are (1) providing aid to persons whom law enforcement reasonably believes are in need; (2) protecting police officers from persons whom they reasonably believe to be present, armed, and dangerous; or (3) preventing the destruction of evidence or contraband. *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007). In this case, the State relies on the third type of circumstance. Generally, to show that warrantless entry was necessary to prevent the destruction of contraband, the primary consideration is "whether there is proof that the officer reasonably believed that removal or destruction of evidence was imminent." *Turrubiate*, 399 S.W.3d at 153 (citing *Kentucky v. King*, 563 U.S. 452, 470 (2011)). Factual considerations may include whether the possessors of the contraband were

11

aware that police were pursuing them, how readily the contraband could be disposed of, as well as police familiarity with behavior of people involved in narcotics sale and distribution. *Id.* at 151.

The United States Supreme Court examined a warrantless search in *Kentucky v. King*. In *King*, the police made a warrantless entry into an apartment after knocking on the apartment door while searching for a suspected drug dealer. *Id.* at 456-57. Uniformed officers chased a drug dealer into an apartment complex. *Id.* at 456. When the officers entered the complex they lost sight of the suspect and did not see whether the suspect entered an apartment on the left or the right side of the hallway. *Id.* The officers smelled "a very strong odor of burnt marijuana[]" emanating from the apartment on the left. *Id.* The officers then "approached the door of that apartment." *Id.* The officers "banged" on the apartment door "'as loud as [they] could' and announced, '[t]his is the police' or '[p]olice, police, police.'" *Id.* When they banged on the door they heard what sounded to them like movement inside and testified that they believed the occupants were attempting to destroy drug-related evidence, so they announced they were coming in and then they "kicked in the door[.]" *Id.* The officers found King, his girlfriend, and another person smoking

marijuana.[3] The officers then performed a protective sweep and found marijuana and powder cocaine in plain view. *Id.* at 457. In a subsequent search they found more drugs, cash, and drug paraphernalia. *Id.* Eventually, the police also entered the other apartment that was on the right side of the hallway where they found the suspected drug dealer that they had chased into the building. *Id.* King was charged with drug trafficking and he filed a motion to suppress the evidence based upon what he alleged was an illegal warrantless search and seizure. *Id.* at 457. The trial court denied the suppression motion and the Kentucky Court of Appeals affirmed. *Id.* The Kentucky Supreme Court reversed, concluding that the police created the exigency to avoid the warrant requirement. *Id.* at 458. The United States Supreme Court reversed. *Id.* at 472.

"[T]he exigent circumstances rule applies when the police do not gain entry to premises by means of an actual or threatened violation of the Fourth Amendment." *Id.* at 469. Subsequent to the Court's opinion in *King*, the Supreme Court reaffirmed that, "a police officer not armed with a warrant may approach a home and knock precisely because that is 'no more than any private citizen might do.'" *Florida v.*

---

[3] King's girlfriend leased the apartment; King's child lived in the apartment; and, King stayed there part of the time. *Kentucky v. King*, 563 U.S. 452, 457 n.1 (2011). The State of Kentucky conceded that King had Fourth Amendment standing to challenge the search. *Id.*

*Jardines*, 569 U.S. 1, 8 (2013) (quoting *King*, 563 U.S. at 469). In *Jardines*, the Supreme Court affirmed the suppression of evidence gained by entry of the police into the curtilage of the defendant's residence with a drug-sniffing dog.[4] *Id.* at 11-12.

In the present case, the trial court heard testimony from one witness, a Polk County Deputy Sheriff. The Deputy testified that during a traffic stop he learned from Freeman that Freeman acquired drugs from two "cartel members" who could be found in a building located behind a residence in Polk County, and that the alleged "cartel members" had an assault weapon, described by Freeman as an "AK-47." Freeman told the Deputy that they also had a "large cache of drugs[]" in the building. The Deputy testified that he decided to conduct a "knock and talk" because he did not believe he could get a warrant based simply upon the information obtained from Freeman. According to the officer, after knocking on the door and announcing themselves as the police, exigent circumstances developed and the officers believed the occupants were destroying contraband. According to the Deputy, after knocking on the door and announcing themselves as the police, the suspects began moving around and making noises inside the building leading the officers to believe the

---

[4] Unlike *Jardines*, Contreras has not made a "curtilage" argument on appeal, nor did he make such argument at the suppression hearing.

suspects were attempting to destroy evidence. On cross examination, the Deputy further explained that although the officers approached the building with weapons drawn, given the information provided by Freeman, officer safety required that they conduct the "knock and talk" in a manner to protect the officers.

Viewing the evidence in a light most favorable to the trial court's ruling, as we must, the trial court could have reasonably concluded from the evidence submitted in the hearing that, given the totality of the circumstances and information known to the officers at the time the officers made the entry into the building, the Deputy reasonably believed that the occupants of the building were armed, possessed illegal drugs, and were attempting to destroy evidence. Based on the record before us, we conclude that the trial court could have implicitly found that the officers had probable cause and that exigent circumstances existed at the time the officers entered the building. The trial judge as the sole judge of the credibility of the witness, could have believed the officer's testimony, and could have concluded that it was reasonable for the Deputy to believe that any further delay would result in the destruction of evidence or contraband. *See Pache v. State*, 413 S.W.3d 509, 512-13 (Tex. App.—Beaumont 2013, no pet.).[5] If an officer has

_____

[5] In *Pache*, we distinguished the facts therein from the facts in *Turrubiate v. State*, 399 S.W.3d 147 (Tex. Crim. App. 2013), stating as follows:

15

probable cause coupled with an exigent circumstance, the Fourth Amendment will tolerate a warrantless search. *Gutierrez*, 221 S.W.3d at 685; *see also King*, 563 U.S. at 470.

---

The only facts purportedly establishing exigent circumstances in *Turrubiate* were the odor of marijuana and the defendant's knowledge that a police officer was at his door. *Id*. at 154. "Lacking [wa]s the additional evidence discussed in *King* of attempted or actual destruction based on an occupant's movement in response to the police knock. We require some evidence of exigency beyond mere knowledge of police presence and an odor of illegal narcotics." *Id*. at 154 (citation and footnote omitted).

[The police officer] had a tip that narcotics were being illegally sold out of the home. The officers went to the home. The trial judge was free to believe the officers' testimony that they saw no signs forbidding trespass. The odor of an illegal drug was emanating from the trailer. Once Pache opened the door and saw the officers, he started running through the trailer. Given the context, the officers could reasonably believe and the trial court could reasonably conclude Pache was trying to get to the illegal drug and destroy it. We conclude [the officers] had probable cause that a crime was being committed and that exigent circumstances necessitated their immediate entry into the home. It was reasonable to believe that a delay to obtain a warrant would result in the destruction of the evidence. If an officer has probable cause coupled with an exigent circumstance, the Fourth Amendment will tolerate a warrantless search. *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007); *see also King*, [563 U.S. at 470] ("Occupants who choose not to stand on their constitutional rights but instead elect to attempt to destroy evidence have only themselves to blame for the warrantless exigent-circumstances search that may ensue.).

*Pache v. State*, 413 S.W.3d 509, 513 (Tex. App.—Beaumont 2013, no pet.).

16

In his appellate brief, Contreras relies heavily upon *United States v. Gomez-Moreno,* 479 F.3d 350 (5th Cir. 2007), a federal Fifth Circuit case that predates *King*. Contreras argues that the "knock and talk" in the present case was improper because "the officers made a show of force, demanded entrance and raided the residence, all in the name of a knock and talk." According to Contreras, "the raid was an unconstitutional violation of his fourth amendment right and Texas Constitutional right." While we are bound by applicable decisions from the United States Supreme Court on interpretations of the federal constitution, we are not bound by lower federal court interpretations although we may consider how lower federal courts have handled the issue. *See Guzman v. State*, 85 S.W.3d 242, 249 n.24 (Tex. Crim. App. 2002); *Stewart v. State*, 686 S.W.2d 118, 121 (Tex. Crim. App. 1984), *cert. denied*, 474 U.S. 866 (1985). Subsequent to *King*, the Fifth Circuit recognized that the "police created exigency" analysis used by the Fifth Circuit in *Gomez-Moreno* "is no longer proper after the United States Supreme Court's decision in *Kentucky v. King . . . .*" *United States v. Aguirre*, 664 F.3d 606, 611 n.13 (5th Cir. 2011). Therefore, we are not persuaded by the *Gomez-Moreno* argument made by Contreras on appeal.

Contreras did not argue at the suppression hearing or in his written motion to suppress that the police created the exigency. Contreras also did not argue that no

17

exigency existed. An Appellant cannot show error in the trial court's denial of a motion to suppress based on a legal theory he did not present to the trial court. *See* Tex. R. App. P. 33.1(a)(1); *Wright v. State*, 401 S.W.3d 813, 822 (Tex. App.—Houston [14th Dist.] pet. ref'd); *Crouse v. State*, 441 S.W.3d 508, 516-17 (Tex. App.—Dallas 2014, no pet.); *see also Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005) ("Appellant's global statements in his pretrial motion to suppress were not sufficiently specific to preserve the arguments he now makes on appeal.").

The State also asserts on appeal that even if the initial warrantless entry into the building was improper, Contreras does not have standing to contest the recovery of the methamphetamine because he had abandoned the property prior to any police misconduct by placing the drugs into the hole in the ground or hole in the floor. We need not examine whether the property had been abandoned because we have concluded that the trial court could have reasonably determined that the entry into the building was based upon probable cause and exigent circumstances. *See* Tex. R. App. P. 47.1; *Story*, 445 S.W.3d at 732. We overrule Appellant's issue and affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

18

Submitted on October 31, 2017
Opinion Delivered April 4, 2018
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.